————o————

NORTH ST. LOUIS CHRISTIAN CHURCH, Respondent, *vs.* ROBERT McGOWAN, *et al.*, Interpleaders, Appellants.

| 62 | 279 |
| 97 | 212 |
| 62 | 279 |
| 128 | 112 |

1. *Corporations, religious—Christian Church—Incorporation—Majority vote— Contest for assets—Fund on deposit, suit for, how brought—Power of corporation to hold property, etc.*—According to the rules of the "Christian" Church, a majority of those voting at any regular meeting of any church organization governed in secular affairs; and such a majority voted in favor of the incorporation of one of them, but a minority refused to co-operate in its action. The petition for incorporation was accompanied by a list of the members, as furnished by the clerk from the church rolls. Shortly after the incorporation the former treasurer delivered to the new treasurer all the books, papers, records and assets previously held by him, among which was a certificate of deposit of the old church fund, which had been placed by him in bank. It appeared that after the incorporation the church continued to worship in the same building, and under the same pastor as before, and was recognized as the same body, and that the minority seceded from it. In suit by the incor-

porated church against the bank for the fund on deposit, the ex-treasurer and minority interpleaded for it, claiming to be the original church, and as such entitled to all its assets. It was held, 1st, that the action of the majority was binding on the whole body of church members, and that the incorporation, conformably thereto, operated 'as a transfer of the rights and interests of the individual members of the corporation so created; 2nd, that presumptively the list furnished by the church showed its membership; 3d, that it was unnecessary for the incorporation, that all the members should sign the petition; but that only those—not less than three in number—applying were required to do so, and that the provision of the statute (Wagn. Stat. 1872, p. 339, ¿ 2) was for the purpose merely of ascertaining who composed the corporation; 4th, that the action of the ex-treasurer in turning over the records, papers, etc., was an express admission that the fund belonged to the church in its corporate capacity; 5th, that the suit was properly brought in the name of the corporation, instead of that of the trustees; 6th, that a claim of the minority, that under the constitution the plaintiff could not hold the property, could not be collaterally considered in such a proceeding; 7th, that under the facts of the case plaintiff was entitled to the fund.

### Appeal from St. Louis Circuit Court.

*Ellis & Sullivan*, for Appellants.

I. By legislative interpretation, Wagn. Stat., 340, § 5, art. VIII, is the only provision under which churches may be incorporated. (Const. Mo., 1820, art. 13, § 5; Const. Mo. 1865, art. 1, § 12; Wagn. Stat., 339–40, ch. 37.)

II. Under this section it is necessary first (1) for all the persons, making application for incorporation, to sign a petition asking for incorporation; and, second (2), to present the same, together with a copy of their constitution or articles of association, to the circuit court of the proper county. (Wagn. Stat., 340, § 5.)

1. It is necessary that all making the application for incorporation should sign the petition. (Ruggles vs. Collier, 43 Mo., 353; Western Boatmen's Ben. Ass'n vs. Kribben, 48 Mo., 37; Johnson vs. Hudson R. R. Co., 49 N. Y., 455; People vs. Schoonmaker, 63 Barb. [N. Y.] 49; Keyport Steamboat Co. vs. Farmers' Transportation Co., 18 N. J., 20; Commissioners of the Poor vs. Gains, 3 Brev., 396; Enckling vs. Simmons, 28 Wis., 272; Alexander vs. Worthington, 5 Md., 485; Demerest vs. Wynkoop, 3 Johns. Ch., 142; Har-

rington vs. Smith, 28 Wis., 43; Id. 67; Torrence vs. Mc-
Dougald, 12 Ga., 530; Beckford vs. Wade, 17 Ves. Jr., 88; Mc-
Clusky vs. Cromwell, 11 N. Y., 593; Collins, Adm'r of Car-
man vs. Carman's Ex'r, 5 Md., 503, 533; Sedg. Constr. Stat.
& Const. Law; Harris and Stickle vs. McGregor, 29 Cal.,
124; Mokelume Hill Canal and Mining Co. vs. Woodbury,
4 Cal., 424; Tooke vs. Hordeman, tr., 7 Ga., 22; Moran vs.
The Commissioners of Miami County, 2 Black [U. S.], 722;
Thurston vs. Prentiss, 1 Mann. [Mich.], 193; Lechmere Bank
vs. Boynton, 11 Cush. [Mass.], 369; Penobscot Boom Cor.
vs. Lamson, 16 Me., 224; Hughs vs. Parker, 20 N. H., 58;
King vs. Armory, 1 Term. Rep., 575.)

III. The record shows that the respondent must fail in this
action, first (1), because it does not appear that it ever be-
came entitled to the property of the old church, and second
(2), because it is incompetent to the institution of this action.

1. Not entitled, because—

(a.) The old church did not become incorporated at all
(cases cited *supra*), and therefore, the incorporators of re-
spondent lost their interest in the money in question, by vir-
tue of their incorporation into a distinct church. (Stebbins
vs. Jennings, 10 Pick., 172; Happy vs. Morton, 33 Ill., 398;
Hadden vs. Chorn, 8 B. M., 77; Baker vs. Fales, 16 Mass.,
487; Gibson vs. Armstrong, 7 B. M., 481–489.) "The with-
drawal of one part of a congregation, and uniting with an-
other church, is a relinquishment of all rights in the church
abandoned." (Bouldin vs. Alexander, 15 Wall., 131; Wat-
son vs. Jones, 13 Wall., 679.)

But if the old church was incorporated, then because,

(b.) The money in question was vested in trustees for the
benefit of the non-incorporated association, and has never
been conveyed to respondent. (Methodist Society of George-
town vs. Bennett, 39 Conn., 293; Perry Trusts, § 328; Shan-
non vs. Frost, 3 B. M., 253; Gibson vs. Armstrong, 7 B.
M., 481; Godfrey vs. Walker, 42 Ga., 562; Presbyterian
Church vs. Picket, Wright, 57; Happy vs. Morton, 33 Ill.,
*supra*, p. 413; Watson vs. Garvin, 54 Mo., 354, 355, 356.)

(c.) Because the respondent is incapacitated from receiving or holding personal property at all. (Const. Mo., art. 1, § 12; Moran vs. Com. Miami Co., 2 Black U. S., 722; North River Ins. Co. vs. Lawrence, 3 Wend., 482; Han. & St. Jo. R. R. vs. Marion County, 36 Mo., 294; The People of the State of New York *ex rel.* The Attorney General vs. The Utica Ins. Co., 15 Johns., 357; Penn. R. R. Co. vs. Canal Com'rs, 21 Penn. St., 9; Bigelow vs. West Wis. R. R. Co., 27 Wis., 478; Cooley's Const. Lim., 185, 186, and cases cited; Johnson vs. Hudson R. R. Co., 49 N. Y., 455; People vs. Schoonmaker, 63 Barb. [N. Y.], 49.) But even if capacitated to hold personal property for certain purposes, there is neither allegation nor proof to bring the money in question within the exception.

2. Incompetent, because—

If authority is given to respondent by the act to sue and be sued, it is subject to the qualification that it is in relation to the sole and only legitimate purpose of its organization. (The Ancient City Sportsman's Club, &c. vs. Miller, 7 Lans. [N. Y.], 412; Scott's Charitable Soc. vs. Shaw, Adm'r, 8 Mass., 532.)

*John P. Hudgens,* for Respondent.

I. It being the admitted rule of government that the will of the majority present and voting, at any regular meeting, governed and controlled the society, the incorporation of the society in accordance with this rule operated as a transfer of the rights and interests of the individual members in the property of the corporation. (Happy vs. Morton, 33 Ill., 398; Baptist Church vs. Witherell, 3 Paige Ch., 296; 42 Penn. St., 503, 506; 33 Conn., 396.)

II. The incorporation act requires only three members to sign the petition for incorporation, and present their constitution with a list of all the members to the circuit court, and then the incorporation embraces the whole list of members filed as associates with the petitioners in the corporation. (Wagn. Stat., 339, §§ 2, 3, 5.)

III. The objection to the want of capacity in plaintiff to sue under the State or church constitution, if an objection at all, cannot be made in this court. Unless raised by demurrer or answer in the court below, it is waived under the statute. (Wagn. Stat., 1014–15, §§ 6, 10 ; Kerr vs. Bell, 44 Mo., 120 ; Beal, Adm'r vs. Morgner, 46 Mo., 48 ; Reugger vs. Lindenberger, 53 Mo., 364.)

WAGNER, Judge, delivered the opinion of the court.

This was originally a suit by the plaintiff, as an incorporated church, against the Boatmen's Saving Institution, to recover the sum of $3,742.70, deposited by Robert McGowan on the 14th of January, 1873, while he was treasurer of the church, prior to its incorporation on the 29th day of January, 1873.

A brief summary of the pleadings will show the grounds on which the parties place their respective claims.

In the petition it is stated, that the plaintiff was organized as a church in 1863, and was known as the "North St. Louis Christian Church ;" that it had met regularly every Sunday for worship, at its building, corner of Eighth and Mound streets, in the city of St. Louis, ever since its organization, and was governed in all matters by the majority of those present and voting at any regular meeting ; that on the 26th day of January, 1873, at a regular meeting previously called to consider the subject of incorporation, a majority voted to become incorporated under the general laws of the State, and authorized the necessary steps to be taken to procure the incorporation of the church ; that, in pursuance of such authority, a petition for incorporation, with a constitution and list of members, was filed in the circuit court of St. Louis county, on the 29th day of January, 1873, and a certificate of incorporation was duly issued by the court to the plaintiff, incorporating it as the "North St. Louis Christian Church ;" that, prior to the incorporation, Robert McGowan was treasurer of the church, and the money deposited by him in the bank, amounting to the sum of $3,742.70, was the money of

the church, which he held as its treasurer at the time of the deposit, and was deposited for safe keeping with defendant, until demanded by plaintiff; that since the incorporation, plaintiff, in its corporate capacity, by its proper officer, demanded the sum for the use and benefit of the church, and prayed judgment therefor.

The answer of the Boatmen's Saving Institution stated that McGowan deposited the money in his own name and as his own money; that on the 14th day of January, 1873, he had the same in the bank to his credit, and that on that day he took a certificate of deposit payable to himself, six months from that day, with interest, and indorsed the same payable to himself, "Robert McGowan, John Burns and Wm. D. Henry, as trustees." It was then alleged, that it was informed that McGowan, Burns and Henry claimed the money as trustees for some church other than the plaintiff, and asked that the parties claiming the same should be ordered to interplead, and that it might be allowed to pay the money into court.

The amended answer in the shape of an interplea, on which the cause was tried, was filed in the names of McGowan, Henry and others, constituting a minority of the members of the church. It denies the allegations in the petition, but, in reality, it admits nearly all the material ones. It admits the organization of the church in 1863; admits that prior to, and at the time of the incorporation, all the interpleaders belonged to the same church with the plaintiff; that the will of the majority of its members, present and voting at any regular meeting of the church, governs and rules in all secular matters; that McGowan was treasurer of the church prior to the incorporation, and the money deposited by him was the funds of the church; that McGowan delivered the certificate of deposit for the money in question to plaintiff's treasurer, as the assets when he resigned the office of treasurer, and that plaintiff was incorporated at the time stated.

As new matter constituting a defense, it is averred that, as defendants did not sign the petition for incorporation, the

incorporation did not include them, and that only such as signed the petition were incorporated, leaving those not incorporated the original church, and as such entitled to all the assets.

There was a replication denying that part only were incorporated, and alleging that, by virtue of the admitted fact that the vote of the majority governed the whole congregation, the incorporation, in pursuance of the vote of the majority, was the incorporation of the whole church, which included plaintiffs as the majority, and the defendants as the minority; and that plaintiff was the representation of the whole association that had been incorporated. There was a trial before the court, and a judgment for the plaintiff.

The important question in the case is, to ascertain what effect the act of incorporation had on the congregation, and whether the interpleaders, who are a minority of the church, are bound by it. The record shows, beyond controversy or dispute, that the matter of obtaining a certificate of incorporation under the statute came up at a regular meeting, and was referred to a committee, to inquire about the necessary steps to be taken, and also to draft a constitution. That committee made a report, which was adopted by a majority of those present. It is agreed that, according to the rules governing the church, a majority of those present and voting at a regular meeting governs, and its action is binding upon the whole body. The petition for incorporation was signed by eighty-seven members, and was accompanied by a list containing the names of one hundred and eighty-one members, which was alleged to include all the known members belong-. ing to the association, including the interpleaders here. The clerk, who kept the records and minutes of the association, testified that the one hundred and eighty-one names constituted the whole membership, so far as he had any knowledge or could derive any information from the pastor. The interpleaders asserted that the whole membership was upwards of two hundred; but there is probably a difficulty in all these organizations in ever arriving at the precise or exact

number of members at any particular time, as members frequently leave and move off without any formal dissolution of their connection; but in the absence of anything to the contrary, the names on the church roll, kept by the clerk, would be the surest, and, indeed, the only reliable criterion to be governed by.

McGowan, who seems to be the leading spirit in this contest, was one of the trustees in the incorporated association, and resigned a number of months after the incorporation was had. Shortly after the action of the court in incorporating plaintiff, he delivered to the new treasurer of the body all books, papers, records and assets which he had previously possessed as treasurer of the church, and among these papers was the certificate of deposit, which was expressed in the receipt as being payable to the order of Robert McGowan, John Burns and William D. Henry, trustees, and being amount of building fund on hand, as shown by a ledger referred to. This was an express admission that the fund belonged to the church in its incorporated capacity, and that as such it was entitled to receive it. Moreover, it appears that since the incorporation the church has continued to worship and hold service at its house, on the corner of Eighth and Mound streets, under the same pastor as before; that it is in reality the same church, and recognized as the same body, and that the interpleaders have abstained from attendance, and are, in fact, seceders from the regular body.

Such being the facts, the remaining question to be determined, is, what effect the incorporation had upon the church organization, and who were bound thereby. The second section of the statute in relation to benevolent, religious and educational associations (Wagn. Stat., 339), provides, that any association of persons, desirous of becoming incorporated under the provisions of this chapter, shall present to the circuit court of the proper county, or the judge thereof in vacation, a copy of their constitution or articles of association, and a list of all their members, together with a petition to such court or judge thereof for a certificate of incorporation un-

der the provisions of this chapter. The act of 1871, which now forms the fifth section of this chapter (Wagn. Stat., 1872, p. 341), declares that any number of persons, not less than three in number, may become an incorporated church, religious society or congregation, by complying with the provisions of this chapter, except that it will be sufficient if the petition be signed by all the persons making the application ; and when so incorporated, such persons and their associates and successors shall be known by the corporate name specified in the certificate of incorporation, and shall be entitled to all the privileges, and capable of exercising all the·powers conferred, or authorized to be conferred, by the constitution of this State upon such corporations.

By the fifth section it will be perceived that any number of persons, not less than three, may become an incorporated church, and it will be sufficient if the petition is signed by all persons making the application.

The second section, which is to be construed in conjunction with the fifth, requires that a list of all the members shall be presented at the same time.

In the present case the application was signed by eighty-seven members, and it was accompanied by a list of one hundred and eighty-one members, which, the church records showed, composed the whole membership. It is a misapprehension to suppose that all the members must sign the application, else they would not be incorporated. The statute does not require it. It is only necessary that those who apply on behalf of the church should sign the petition, and the list of all is designed to show who compose the entire corporation. The legislature, in enacting this provision, doubtless had in view the well known fact that many churches admitted to their membership infants and minors of tender years, and it was not deemed requisite that they should be compelled to sign the application. Whilst regarded as members, it would be a meaningless and useless ceremony to require their signatures.

Hence those, who were competent to act intelligently, were considered sufficient, and it was thought to be prudent that a list of all the members' names should be filed in order to more readily determine who composed the association. That a majority vote, taken according to the rules of the church, authorized the incorporation, cannot be disputed, and an organization under the statute, by a majority of the society, operates as a transfer of the rights and interests of individual members to the corporation thus created. We think this is conclusive of the whole case.

It has been contended, that the corporation cannot maintain this action in its own name, and that if it is maintainable at all, it should have been brought in the name of the trustees. But this argument is founded upon an obvious error. Religious incorporations are aggregate corporations, and whatever property they possess or acquire is vested in the body corporate. It is true the officers have it under their control or dominion, but their possession is the possession of the artificial person whose agents they are. Although called trustees, they do not hold the property in trust. Their right to intermeddle with or manage the property is an authority, and not an estate or title. They have no other or greater possession than the directors of a bank in a banking establishment. The whole title or estate is vested in the incorporated body, and the corporation is the proper party to sue.

The further point has also been urged, that plaintiff, under the constitution, could not hold this property, but that is a question that we will not discuss in this collateral proceeding. We think the case is exceedingly clear, and we do not entertain the slightest doubt in reference to the correctness of the judgment below. We cannot see, upon any view, that the defendants have any claim to a finding in their favor.

The judgment must be affirmed. Judges Napton and Sherwood concur; Judges Vories and Hough absent.