MAGDALENA SCHNEIDER, Administratrix of Estate and Widow of MARTIN SCHNEIDER, and LENA SEIDNER et al. v. ALEX. SCHNEIDER et al., Appellants.

Division One, July 19, 1920.

1. **QUIETING TITLE: Estoppel in Pais: Classification: Suit in Equity.** In cases relating to title to real estate estoppel *in pais* is classified as purely equitable. In a suit to ascertain and determine title, if the answer pleads estoppel *in pais* and joins the plaintiff in asking the court to ascertain and determine the title, it converts the suit, otherwise an action at law, into a suit in equity. .

2. ———: ———: **Privies: Knowledge.** Estoppel *in pais* extends to and bids privies in blood, privies in estate and privies in law. It also binds all persons who with actual knowledge aid another in the act which estops him.

3. ———: ———: **Accretions: Deed from County to Sons.** Where the father had bought "made" lands by quit claim deed, and afterwards the county brought ejectment therefor on the ground that they were not accretions, but had formed as an island in the river, and under the statute belonged to it, and in settlement of said suit the father agreed by way of compromise to pay the county $2.50 an acre therefor, and at his request the lands were conveyed to his sons, the defendants, who paid the purchase price and were put in possession by the father and have made improvements, he was thereafter, during his life, estopped to claim title to said lands; and his widow, who knew that the sons were about to invest their money in the lands and advised that it be conveyed to them, and his daughter, are likewise barred by the father's estoppel *in pais*, to assert title against the sons, the widow by her knowledge and conduct, and both the widow and daughter as privies with the husband and father, whether or not the lands were in fact accretions to the father's lands or formed as an island and belonged to the county.

Appeal from Franklin Circuit Court.—*Hon. R. A. Breuer*, Judge.

REVERSED AND REMANDED (*with directions*).

*Jesse H. Schaper* and *Rosenberger & Dowell* for appellants.

(1)   There is no substantial evidence in the case to support the finding of the 'trial court that defendants acquired no title to tract of land No. 2 under patent from Franklin County, and therefore the court erred in so doing.   (a) Under the Laws of 1895 granting river bed lands to counties in which they are located, for school purposes, the county acquires title to lands formed, not only by the recession and abandonment of the waters of the Missouri River, or by the formation of islands in the waters thereof, but also to all accretions thereto formed, even though the water 'margin thereof unites with the main shore.   Moore v. Farmer, 156 Mo. 33;  R. S. 1909, sec. 8032.   (b) The owner of land on the Missouri River is not entitled to land formed by the river depositing sand on its bed forming an island and afterwards connecting with the shore by the receding of the intervening river, but only to such land as may be added to the original grant by the gradual process of accretion or reliction to his shore line.   Benson v. Morrow, 61 Mo. 345;  Cooley v. Golden, 117 Mo. 33;  Perkins v. Adams, 132 Mo. 131;  Hahn, v. Dawson, 134 Mo. 581;  Vogelsmeier v. Prendergast, 137 Mo. 271;  Moore v. Farmer, 156 Mo. 33.   (2) There is no substantial evidence in the case to support the finding of the trial court that plaintiffs were not estopped from claiming tract of land No. 2, and therefore the court erred in so doing.   (a) If Martin Schneider, Sr., was living and had instituted this suit, and was prosecuting the same, unquestionably he would be estopped from claiming title to tract No. 2 in controversy.   Lumber Co. v. Craig, 248 Mo. 319;  Rice v. Bunce's Administrator, 49 Mo. 231;  Skinner v. Stouse, 4 Mo. 93;  Austin v. Loring, 63 Mo. 19;  Raley v. Williams, 73 Mo. 310;  Manning v. Coal Company, 181 Mo. 376;  Stevenson v. Saline County, 65 Mo. 425.   (b) Plaintiffs are likewise estopped.

Herman on Estoppel, paragraphs 45 and 46; Thistle v. Buford, 50 Mo. 278. (c) The activity of equity powers cannot be successfully invoked when a party has slept on his rights and induced others to act on the confident belief that he has abandoned them. Moreman v. Talbot, 55 Mo. 395; Landrum v. Bank, 63 Mo. 48; Schradski v. Allbright, 93 Mo. 42. (d) Where one obtained title in good faith and expended a specified sum in its procurement equity will not interfere unless the rightful claimant pays or tenders the amount expended. Craven v. Moore, 61 Mo. 178. (3) The court erred in making an equitable finding as to tract of land No. 2 when no such issue had been raised by the pleadings. (a) There is nothing in the petition or answer which gives this proceeding an equitable character. The rules applicable in ordinary actions at law, therefore, govern the case in this court. Franke v. Franke, 213 S. W. 38; Bacon v. Theiss, 208 S. W. 254; Thompson v. Stillwell, 253 Mo. 89; Lee v. Conran, 213 Mo. 404.

*Robert Walker* for respondents.

(1) An owner of land on the Missouri River, in taking the risk of having his land or any part thereof (as happened to Martin Schneider and his grantors) washed away, is entitled in like manner to retain and hold whatever may be added to his land. Benson v. Morrow, 61 Mo. 350; Smith v. St. Louis Public Schools, 30 Mo. 300; Frank v. Goddin, 193 Mo. 390. (2) And the doctrine of additions, to lands on a navigable river, by accretion or reliction, is firmly established in this State. St. Louis v. Mo. Pac. Ry. Co., 114 Mo. 13; Buse v. Russell, 86 Mo. 209; Crandall v. Allen, 118 Mo. 403; Naylor v. Cox, 114 Mo. 232; Frank v. Goddin, 193 Mo. 390. (3) According to the testimony of the only witnesses who knew the history of the formation of the land designated as "Tract of Land No. 2" from the beginning, and other witnesses, the said land was formed by way of addition out from the main shore,

and without a nucleus forming out in the river and working toward the shore. And there being no testimony to the contrary, Martin Schneider, through the deeds executed to him by Meyer and Rohlfing, who held under *mesne* conveyances from the Government, was the owner of said lands when he died. McBain v. Johnson, 155 Mo. 191; Delassus v. Flaherty, 164 Mo. 361; Cooley v. Golden, 117 Mo. 33; Frank v. Goddin, 193 Mo. 390. (4) Defendants when taking the patent from Franklin County were equally conversant with everything pertaining to the formation of said land and the nature thereof, as the father was. They could not be deceived by anything their father did or said concerning the same. 11 Am. & Eng. Enc. Law (2 Ed.), p. 425; Estis v. Jackson, 111 N. C. 145; Bales v. Perry, 97 Mo. 263; Blodgett v. Perry, 97 Mo. 263; Freeland v. Williamson, 220 Mo. 217. (5) Defendants never having even talked with their mother concerning their taking a patent from Franklin County, and paying the county $1391.37 for the claim made by the county, could not in entire ignorance of their mother as to what they were doing, defeat the rights of the mother as wife of their father; and the element of an estoppel is entirely lacking if the father otherwise was the owner of the land. Northrup v. Colter, 150 Mo. App. 639; Konta v. St. Louis Stock Exchange, 180 Mo. 26. (6) And if the father could not defeat the rights of the mother by causing his three sons to expend $1400 in settling claim made to land owned by him, otherwise worth $10,000 as testified on the trial, the sister of defendants could not be deprived of her rights either as daughter of the father. A deed void for one purpose is void for every other purpose. State v. Casteel, 110 Ind. 182. (7) Defendants when taking the patent from the county could not have expected and did not expect to buy anything more than the county's claim, and they paid $1391.37 for this. For this outlay, they have been protected in the trial court's decree, in having a lien for such expenditure adjudged against Tract of Land No. 2.

GRAVES, J.—From appellants' brief we borrow an outline of the issues. We have stricken out unnecessary words, and added words and sentences where we deemed it advisable. The statement thus modified follows:

"This is an action under Section 2535, Revised Statutes 1909, to determine and quiet title to lands described in the petition of plaintiffs situated in Franklin County, Missouri.

"One Martin Schneider died intestate. He left surviving him a widow, the plaintiff, Magdalena Schneider, and the following named children and heirs at law, to-wit: A daughter, the plaintiff, Lena Seidner, and the following named sons, the defendants, namely, Alex. Schneider, Frank Schneider and Martin Schneider, Jr.

"The plaintiffs in their petition alleged that Martin Schneider, Sr., died seized and possessed of certain real estate situated in Franklin County, Missouri, being part of Sections 8 and 9 south of a slough, with all accretions formed thereto on the east side in said section till to the Missouri River, and a part of Section 16, together with all accretions formed thereto to the east till to the Missouri River, embracing all land on the north side of the center line running east and west through said Section 16, and continuing east through said Section 15 in the same manner, all in Township 45, Range 3 west.

"The plaintiffs further alleged in their petition that Martin Schneider, Sr., died leaving debts unpaid to a considerable amount; that the plaintiff Magdalena Schneider is the duly and legally appointed and qualified and acting administratrix of the estate, and that it will be necessary in order to pay the debts of the estate to sell a part of the real estate of the decedent.

"The plaintiffs in their petition claimed that Magdalena Schneider, as widow, has an interest in said real estate, and that subject to the payment of debts the plaintiff Lena Seidner and the three defendants owned the real estate in plaintiffs' petition described, in equal parts.

Schneider v. Schneider.

"A plat of the lands was introduced in evidence, as follows:

"This clearly shows the lay of the land. All of the lands described in plaintiffs' petition are south of the slough shown on the plat above referred to, the general direction of the slough being from west to east, and the lands are also all west of the Missouri River, as shown on the aforesaid plat, the course of the river being from the northwest to the southeast.

"By a reference to the judgment and decree rendered by the trial court, it will be noted that the trial court in describing the lands as shown on the aforesaid plat and situated north of the center line of Section 16, and west of the Missouri River, and south and east of the two sloughs shown on the plat, denominated said tract of land as tract No. 3.

"The lands shown on the plat above referred to as being situated north of the center-section line of Section 16 and south and west of the two sloughs shown on the plat, and east of the line marked 'Old High Bank,' were designated and denominated by the court as tract of land No. 2, and all those lands described in plaintiffs' petition lying west of the line marked 'Old High Bank,' on the plat hereinabove referred to, were designated and denominated by the court as tract of land No. 1. For convenience we have marked the tract numbers on the plat. The defendants in their amended answer as to tract of land No. 1, admitted the relationship of the parties as alleged in plaintiffs' petition, and as to tract of land No. 1, admitted that the plaintiff Magdalena Schneider had a dower interest therein, and that subject to the payment of the debts of the decedent the plaintiff Lena Seidner and the defendants owned said tract of land No. 1.

"As to tracts of land Nos. 2 and 3, the defendants in their amended answer alleged that said tracts of land Nos. 2 and 3 had formed in the old bend of the Missouri River by the recession and abandonment of the waters thereof, or by the formation of an inland, or islands, in said river; that under the Act of the Legislature of this State, approved April 5, 1895, said tracts of land Nos.

2 and 3 became the property of Franklin County, Missouri, and that the defendants by patent dated the 13th day of May, 1915, and issued by Franklin County, Missouri, had become the owners of said lands.

"Defendants in their amended answer further alleged that during the lifetime of Martin Schneider, Sr., Franklin County brought a suit in ejectment against Martin Schneider, Sr., for the possession of tracts of land numbers two and three, and that after said suit had been instituted the said Martin Schneider, with the full knowledge and consent of the plaintiff, Magdalena Schneider, actively induced the defendants to purchase tracts of land numbers two and three from Franklin County, and to pay to said county the sum of $1391.37, the purchase price for the same, and that Martin Schneider, in person, and by his counsel, with the full knowledge and consent of the plaintiff Magdalena Schneider, caused and permitted the County Court of Franklin County, Missouri, to issue patents to said lands to defendants, the defendants paying therefor, and that Martin Schneider, Sr., and the plaintiff Magdalena Schneider, put defendants in the possession of said lands, tracts two and three, as owners thereof, and that the said Martin Schneider and Magdalena Schneider fully acquiesced in and ratified said sale, and that the defendants in good faith and without notice of any adverse claim of Martin Schneider or his wife, entered into the possession of said lands after having bought the same, and made valuable and permanent improvements thereon, and under those facts as pleaded the defendants claimed that Magdalena Schneider and Lena Seidner, who claim under Martin Schneider, Sr., are estopped from claiming any interest in or title to tracts of land numbers two and three.

"The defendants alleged in their answer that Martin Schneider, Sr., owed the three defendants a large sum of money for work and labor done, and in order to compensate them for work and labor, he consented in

284 Mo.—21

compromising the ejectment suit above referred to that the patents might be issued to his sons, they paying therefor.

"The reply controverted the facts as pleaded by the defendants in their answer."

By its judgment the court found for defendant as to tract number three, and for the contentions of plaintiffs as to tract number two. Defendants disclaimed interest in tract number one, except as heirs. Plaintiffs did not appeal, and therefore abided the judgment as to tract number three. The dispute here is as to tract number two, and as to some equitable adjustments made in the decree, which, if necessary, will be noted in the opinion. This outlines the case.

I. It is suggested that this case is one at law, and not in equity. This suggestion comes from appellant, and is no doubt urged because the trial court granted certain equitable relief. If a case at law, the judgment Suit in is erroneous, and if in equity it may or may not be erroneous, depending upon the issues made Equity. and evidence adduced. It is important, however, to locate upon which side (legal or equitable) of the trial court the case belonged. It was tried without the intervention of a jury.

The petition is an ordinary petition under section 2535, Revised Statutes 1909, to determine and declare title. Is the action in equity per force of the answer? The answer (in one count) pleads estoppel *in pais,* and joins the plaintiff in asking the court to ascertain and determine the title. The courts have not been uniform in classifying estoppel *in pais,* but we think when considered in cases touching the title to real estate it has generally been classified as purely equitable. In 10 R. C. L. p. 841, sec. 147, it is said:

"At common law estoppel is founded on deeds and judicial records, but in equity estoppel arises from matters *in pais.* At common law matter *in pais* was mere evidence. It is now, however, generally held that an

equitable estoppel or estoppel *in pais* may be enforced in
a court of law as well as in equity, though in some
jurisdictions, and generally in states where the legal
and equitable remedies are not blended, it is still the
rule that title to land cannot be affected in a court of law
by the assertion of an equitable estoppel and that in such
cases resort must be had to a court of equity."

We have so recognized it in this State in an eject-
ment suit. We mean to say that we have classified the
defense as one in equity. In Clyburn v. McLaughlin,
106 Mo. l. c. 524, McFarlane, J., said:

"The question for first consideration is, whether
the plea of estoppel, if sustained by the proof, constitutes
a good defense to the action of ejectment. It is well
settled in this State that under our Code of Civil Pro-
cedure a defendant, in an action of ejectment, may by
answer interpose an equitable defense, and that his
equities may be tried and determined directly in that
action, without having to resort to an independent suit
in equity."

In the later case of Ming v. Olster, 195 Mo. l. c. 472,
Valliant, J., said:

"A plea of estoppel *in pais* is not necessarily a mat-
ter of equity jurisdiction; it is cognizable also in courts of
law. In Bigelow on Estoppel (5 Ed.), p. 557, it is said:
'Though still called "equitable estoppel," it is as fully
avoidable at law as in equity.' In 16 Cyc. L. & P. 682,
it is said: 'The term [estoppel *in pais*] was borrowed
originally from equity and hence denominated "equitable
estoppel." Equitable estoppels are so called not, how-
ever, because their recognition is peculiar to equitable
tribunals, but because they arise upon facts which render
their application in the protection of rights equitable and
just. The doctrine is recognized in the courts of com-
mon law just as much as in courts of equity, although
it was at first administered as a branch of equity juris-
prudence.' Under some circumstances, however, full
effect cannot be given to the estoppel by a mere judg-

ment at law, for example, where it becomes necessary to fill a gap in record title by a decree vesting the title.''

In Illinois we find the pronouncement made by Walker, C. J., in Mills v. Graves, 38 Ill. l. c. 464, thus: ''And a recovery was opposed upon the ground that Ellis and those claiming under him, were estopped by matter *in pais* from asserting title. The doctrine of estoppels *in pais*, at this day, seems to be that they are equitable and not legal, when they relate to real property. An estoppel is defined to be an impediment or bar to the assertion of a right of action arising by a man's own act, or where he is forbidden by law to speak against his own act. It extends to and binds privies in blood, privies in estate and privies in law.'' The case was an action in ejectment.

To like effect is the rule stated by Perley, C. J., in Horn v. Cole, 51 N. H. l. c. 289: ''The ground on which a party is precluded from proving that his represent-ations on which another has acted were false is, that to permit it would be contrary to equity and good con-science. This has been sometimes called an equitable estoppel, because the jurisdiction of enforcing this equity belonged originally and peculiarly to courts of equity, and does not appear to have been familiarly exercised at law until within a comparatively recent date; and, so far as relates to suits at law effecting the title to land, I understand that in England and in some of the United States the jurisdiction is still confined to courts of equity.''

In an action to determine title, the Supreme Court of the State of Washington, in Carruthers v. Whitney, 56 Wash. l. c. 333, said: ''Estoppel is an equitable pro-ceeding, or speaking more accurately perhaps, it is the equitable result of a wrongful proceeding or act, a reliance upon which would, in the absence of an estop-pel, work an injustice to an innocent person. At the common law estoppel was founded on deeds and records of courts, but estoppel in equity is estoppel *in pais*. The principal now applies because it has been found that the

common law rule was too narrow and inadequate for the attainment of justice under the multiplied transactions of modern times, and hence the equitable estoppel of the present day. The well-understood idea of equitable estoppel is that, where a person wrongfully or negligently by his acts or representations causes another who has a right to rely upon such acts or representations to change his condition for the worse, the party making such representations shall not be allowed to plead their falsity for his own advantage.''

It is true that a great many cases rule that estoppel *in pais,* or equitable estoppel, is no defense in a law action, as in ejectment suits. For the cases see note to Kenny v. McKenzie, 49 L. R. A. l. c. 777. But at page 778 of the same volume the learned annotator says: ''Under reformed procedure equitable estoppel is available as a defense to an action of ejectment. [Clyburn v. McLaughlin, 106 Mo. 521, 27 Am. St. 369, 17 S. W. 692; Corkhill v. Landers, 44 Barb. 218; Moore v. Brownfield, 10 Wash. 439, 39 Pac. 113.] And under laws providing that there shall be but one form of action for the administration of both law and equity, the defense of equitable estoppel is available—in an action of ejectment (Duke v. Griffith, 9 Utah, 469, 35 Pac. 512);—in an action to recover dower (Hilton v. Sloan, 37 Utah, 359, 108 Pac. 689). So, the defense of equitable estoppel is available in an action of ejectment under the Administration of Justice Act, which provides that 'for the more speedy, convenient, and inexpensive administration of justice in every case, the courts of law and equity shall be, as far as possible, auxiliary to one another respectively' (Stevens v. Buck, 43 U. C. Q. B. 1). Kenny v. McKenzie is in harmony with these decisions.''

We have the code, or reformed, practice in Missouri. Under it we have always ruled that a party can made all the defenses he has in the one action, whether such defenses be what were theretofore denominated legal or equitable. Section 2535, Revised Statutes 1909,

contemplates that such may be done, and Section 2535 says that the suits under Section 2535, shall be tried in all respects under "the code of civil procedure."

And in Lee v. Conran, we ruled that whether an action to determine title was equitable or legal was dependent solely upon the issues raised. If those issues were equitable, the case was in equity; and if the issues were legal, the action was at law.

We therefore rule (1) that estoppel *in pais* was a proper defense to the action; (2) that at least in cases involving title to land, such defense in an equitable one, and (3) that the present case is to be reviewed here as one in equity, and not as one at law.

II. The trial court held that as to tract No. 2, as shown by the plat, the defendants got no title by the deed from the county, because tract No. 2 was accreted land to tract No. 1. The court also held that tract No. 3 was not accreted lands, and that the deed or patent from the county gave defendants absolute title. It is extremely doubtful whether the evidence will justify the finding of the trial court to the effect that tract No. 2 was accreted lands, but with the view that we have of the case on the matter of estoppel *in pais*, we need not discuss that question, and the evidence thereon. We think plaintiffs are estopped to assert title to either tracts No. 2 or No. 3, and this question we take next.

Accretion.

III. The trial court found that the plaintiffs were not estopped. The plaintiffs are the widow and daughter of the Martin Schneider, deceased. The three defendants are the sons of deceased. In 1913 the said Martin Schneider acquired all the land in the three several tracts, as shown on the plat. The lands in tract No. 1 were conveyed to him by warranty deeds. The lands in tracts No. 2 and 3 by quit-claim deeds. These two tracts were either accreted lands, or lands formed within the terms of Section 8032, Revised Statutes 1909. The process of formation began in 1875. If these two

tracts (2 and 3) or either of them formed in the way set out in said Section 8032, supra, then they were county lands, for such section reads:

"All lands belonging to the State, not otherwise appropriated under the laws thereof, which have 'been formed by the recession and abandonment of their waters of the old beds of lakes and rivers in this State, or by the formation of islands in the navigable waters of the State, are hereby granted and transferred to the respective counties in which such lands are located, to be held by such counties for school purposes."

The statute was passed in 1895 and was first construed in 'Moore v. Farmer, 156 Mo. 33. Franklin County in 1914 had these lands in tracts 2 and 3 surveyed and platted, on the theory that their formation was in the manner designated by Section 8032, supra, and that they belonged to the county. The situation was such in 1913 that Martin Schneider's grantors would only make quit-claim deeds.

In 1914 Franklin County brought suit against Martin Schneider for the lands in tracts 2 and 3, claiming title under the Act of 1895, now Section 8032, Revised Statutes 1909. This suit was compromised by Martin Schneider by him agreeing to pay the county $2.50 per acre for all these lands, aggregating in all the sum of $1391.37 and getting from the county a patent to the lands. When the time came for the issuance of the patent and the payment of the money, Martin Schneider, the father, appeared before the County Court, and asked that the patent be issued to the three sons, these defendants. It is conclusively shown that the $1,391.37 was paid by the sons, and that the father desired to have them get the lands. The wife, now the widow, pending this suit of the county against Schneider, advised him to let the lands go, because, as she said, he was indebted enough then, without going further in debt. In addition to this the widow says that whilst the suit was pending and the compromise under way, she saw a letter from Schneider's lawyer to Schneider, from which she learned

that the land was to be deeded by the county to the three defendants. So that she not only advised the husband to let the county have the land rather than pay the money, but knew that the three defendants were contemplating taking the patent from the county and paying the purchase price, and no dissent was made. There is evidence that these boys had worked some years for the father after attaining their majority, and that he wanted them to have the land for that reason. This, however, is not so material. If Martin Schneider, the father, was claiming this land as against these sons, there is no question that he would be estopped. He not only stood by and saw the patent issued to the boys, and the money paid by them, but he expressly acquiesced in it. This would estop him, and at least the plaintiff, Lena Seidner, his daughter. The widow is estopped by her own conduct, if not on the same doctrine of privity which estops the daughter. [Mills v. Graves, 38 Ill. l. c. 464.] As said in this case, in speaking of estoppel *in pais.* "It extends to and binds privies in blood, privies in estate, and privies in land."

In the early case of Skinner v. Stouse, 4 Mo. l. c. 96, this court said: "The law is that if the owner of property stands by and sees another sell his property and says nothing when he might with propriety speak, he shall not afterwards have the property, much less can he have it when he encourages a person to buy."

This doctrine applies with equal force to those in privity with the person estopped. [Thistle, Trustee, v. Buford, 50 Mo. l. c. 281. See also Stevenson v. Saline County, 65 Mo. l. c. 429; Austin v. Loring, 63 Mo. 19; Raley v. Williams, 73 Mo. 310; Rice v. Bunce, Admr., 49 Mo. 231; Manning v. Coal Co., 181 Mo. l. c. 376; Lumber Co. v. Craig, 248 Mo. 319.]

In this case not only did the father direct the patent to be issued to the boys (now defendants), but the mother advised the father to yield the title to the county, and through the letter spoken of heretofore, knew that defendants were going to invest their money in the land.

The, defendants not only paid the purchase price, but have made some improvements on the land since. On the whole the plaintiffs are estopped from asserting title adverse to the county's patent to defendants.

As to tract 2, as well as tract 3, the judgment should have been for the defendants.

Judgment reversed and cause remanded with directions to the circuit court to enter up judgment in accordance with the views expressed in this opinion. All concur, except *Woodson, J.*, absent.