CONGREGATION B'NAI ABRAHAM v. SAMUEL ARKY ET AL., Appellants.
—20 S. W. (2d 899.

Division One, September 13, 1929.

*Brackman, Hausner & Versen* for appellants.

*Taylor, Mayer & Shifrin* for respondent.

RAGLAND, J.—An opinion in this case prepared by Commissioner LINDSAY has the approval of the court, expect as to one of the questions disposed of. The portion which has such approval, and which is adopted, follows:

"This action, as instituted, was one to quit title to real estate under the provisions of Section 1970, Revised Statutes 1919. The defendants are Samuel Arky and Hannah Arky, his wife. The plaintiff alleged that it was a corporation duly organized by a pro forma decree of the Circuit Court of the City of St. Louis; that it was the owner in fee simple of the real estate in dispute, which includes a building; that the defendants claim an interest and estate in said real estate; and the plaintiff asked that the titles and interest of plaintiff and of defendants be ascertained and determined, and that the court by judgment or decree define and adjudge the title, interest and estate of plaintiffs and defendants severally in the property, and that plaintiff be adjudged or decreed such other or further relief as should be deemed just and proper.

"The defendants filed separate answers, but in like form. The first count of the separate answers alleged that defendant Samuel Arky owned an undivided one-fourth interest in the property in fee simple, denied that the plaintiff was the owner in fee simple of the property, and prayed judgment, and for costs.

"The second count of the answers denied the legal existence of plaintiff as a corporation; denied its right to sue or be sued, to contract, or to own the property as 'Congregation B'Nai Abraham'; pleaded the terms of the articles of association, and the pro forma decree purporting to incorporate the plaintiff, as being in violation of Section 8, Article II of the Constitution of Missouri, and in violation of the statutes; and averred that by reason thereof the pretended corporation had no existence. The answers were verified. No reply was filed.

"It appears from the evidence that at sometime in the year 1917, defendants Samuel Arky and three other persons, Meyer Cummins,

Israel Romansky and Morris Reiss, contracted for the purchase of the property in dispute from the then owners of that property, for the sum of $10,000 and paid $1,000 down as earnest money, each of the four paying $250. It was their purpose to sell the property to a certain lodge, known as the McKinley Lodge, a Jewish fraternal organization, for $12,000. They failed to make a sale to the Lodge, and found themselves with the property on their hands. It further appears that at about this time the parties named, and others, all of the Jewish faith, conceived the plan of organizing a congregation of which Samuel Arky and his three associates were or became members, and the plan was also conceived of selling the property to such congregation. Defendant Samuel Arky was active and a leading spirit in the formation of this congregation. He desired that it should be organized under the name of Congregation B'Nai Abraham. This, it appears, was because his father's name was Abraham. As a result of meetings and negotiations, an agreement was reached that the four named owners would sell and the congregation should buy the property, at the price of $11,000, which would give each of the four a profit of $250. It is shown by the evidence, although the time is not definitely fixed, that defendant Samuel Arky paid to Romansky and Reiss, $250 each—that is, the sum each of them had paid as earnest money in the purchase of the property. It is shown by the evidence that, late in 1917, and pending the negotiations with the congregation, the four owners obtained two loans aggregating $7,000 secured by mortgages upon the property. The lender testified that he was willing to finance the four individuals, but not willing to finance a church. The evidence tends to show that as a result of these negotiations, the Congregation was to take the property and pay these loans, and was to provide the additional sum of $4,000 to make up the purchase price of $11,000. It is shown that the members of the Congregation by gifts and the giving of notes raised $2,000, which was turned over to defendant Arky, and which left $2,000 yet to be provided. Plaintiff's evidence tended to show that the transaction proceeded upon the theory that there was to be paid to defendant Arky $1,000, which consisted of his payment of $250 earnest money, the payment by him of $500 to Romansky and Reiss, and also $250 as his share of the profit. The remaining $1,000 to be taken care of consisted of the $250 due Cummins, as return of the earnest money paid by him and $250 as his share of the profit, $250 to Romansky and $250 to Reiss as the share of each of them in the profit. The evidence also was that Cummins subsequently donated the $250 representing his share of the profit.

"No written agreement was drawn and signed between the congregation and the four owners. There were meetings, and in the minutes of some of these meetings appear statements or references to the purchase or ownership of the property, by the Congregation. Defendant Arky was the treasurer beginning at about the time of organization, and thence afterward for about two years. In the minutes of at least one of the meetings, Samuel Arky is shown as present and signing the minutes as treasurer, wherein there was reference to the ownership of the property by the Congregation. The Congregation entered into possession of the property at some time in 1917, and in the period between then and the time of the trial has occupied and used the property made some improvements thereon, and fitted it as a place of worship, according to the Jewish faith. The property had been a Mormon temple. The Congregation paid special taxes thereon; and had paid a considerable sum on the encumbrances upon the property before the time of the trial.

"In November, 1917, the Congregation was incorporated by a pro-forma decree of the circuit court. The articles will be noticed later. The Congregation went forward in the possession and use of the property for a considerable period without any deeds having been made by Arky and his associates. In 1923, the Congregation, claiming ownership, brought suit to quiet title against the four mentioned and their wives. Pending trial of the suit as so instituted, an adjustment was made with Cummins, Romansky and Reiss; the suit was dismissed as to them, and the amended petition herein to which reference has been made, was filed against Samuel Arky and his wife as defendants. The defendant Arky claimed that the Congregation owed him a total of $4,478.64. This sum was made up of the $1,000 which has been mentioned, and of items for commissions or costs paid for procuring the loans, which had been negotiated upon the property and of claim of moneys advanced by him at different times. The books were examined by an accountant, and his report was put in evidence. This report, and the testimony otherwise, show there was no such record kept of receipts and expenditures as would enable anyone authoritatively and definitely to state an account. The books show that at the time defendant Arky ceased to be treasurer in October, 1919, he turned over to his successor the sum of $1281.65. According to the report of the accountant, it was not clear from the books and the records available, whether said sum was money collected by Arky as treasurer or was money advanced by him. Defendant Arky himself testified as to sums paid by him as commissions in procuring the loans on the property and moneys advanced for other purposes, but taken as a whole the oral testimony and much of the contents of the exhibits introduced in

evidence are so confusing, indefinite and contradictory that we can make no conclusive or settled finding of the moneys advanced by Arky.

"In the articles of association under which plaintiff was incorported, the purposes thereof are set forth as follows:

" 'Know all men by these presents: That we, the undersigned, for the purpose of forming a religious association under the laws of the State of Missouri relating to such societies, and more particularly under Article 10, Chapter 33 of the Revised Statutes of Missouri, 1909, hereby enter into the following agreement:

" 'First: The name of this association shall be Congregation B'Nai Abraham, and shall be located in the city of St. Louis, Missouri.

" 'Second: The purposes and aims of said congregation are the promotion of the principles of Judaism and religious worship in accordance with the doctrines thereof, and to unite undersigned and others of their faith into a church organization and to conduct services in a synagogue according to the rites and ritual of the Orthodox Hebrew religion.

" 'Third: To maintain a school for the teaching of Hebrew and to encourage attendance at lectures of a religious and educational character; to acquire by lease, purchase or otherwise a proper house of worship and to buy, sell, lease or own such real or personal property as may be necessary to carry out the purposes of said organization, it being agreed, however, that this organization is not formed for pecuniary profit or gain.

" 'Fourth: The organization shall make such by-laws for its government and regulation as may be consistent with the Constitution and laws of the State of Missouri, and of the United States.'

"After hearing the evidence and taking the case under advisement, the court entered a decree, finding that plaintiff 'is indebted to defendants in the sum of $1,000 and upon payment by plaintiff to defendants of the said sum of $1,000 finds the issues in favor of the plaintiff;' and adjudged and decreed that plaintiff was vested with the fee simple title to the real estate in controversy; adjudged and decreed that 'defendants have no right, title, claim or interest in the estate or title whatsoever, either legal or equitable, in and to said real estate or any lien thereon,' and adjudged the costs against the defendants.

"Counsel for defendants contend that the plaintiff was organized as a religious corporation and was incorporated in violation of Section 8 of Article II of the Constitution; that therefore the decree incorporating the plaintiff is void, plaintiff has no legal existence, and cannot maintain this suit as such corporation. Section 8 of Article II of the Constitution of Missouri is as follows:

" 'That no religious corporation can be established in this State, except such as may be created under a general law for the purpose only of holding the title to such real estate as may be prescribed by law for church edifices, parsonages and cemeteries.'

"In support of their contention, counsel for defendants call attention to Proctor v. Board of Trustees, 225 Mo. 53. That was a suit by the heirs of a testator against two corporate defendants claiming under the will. They were held to have been incorporated for religious purposes, and not incorporated for the purposes only of holding title to real estate for church edifices, parsonages and cemeteries; and the ruling was that they fell 'within that class of religious corporations which were prohibited by the Constitution from taking or holding title to real estate for any other purposes,' and as a result, could not take title to the property in issue. The defendants in that suit claimed that the ruling was the sustaining of a collateral attack upon their corporate existence, which could not be maintained. In answer thereto, it was said that the plaintiffs, as heirs, were not making a direct attack upon the corporate existence of the defendants, but were only insisting that neither of the defendants was legally capable of taking and holding the property described in the will for the purposes and uses declared in the will. Upon that point the court, Division Two, had its attention directed to St. George's Church Society v. Branch, 120 Mo. 226; Church v. Tobbein, 82 Mo. 418; Church v. McGowan, 62 Mo. 279. It was said l. c. 68, that the rule announced in those cases had no application to the proposition involved in the case before the court. Proceeding, we find the following in the opinion, l. c. 69:

" 'It will be observed that as between the plaintiffs in this case and the defendants, there is no question of a contract nature nor is there any question of estoppel by which the plaintiffs would be precluded from setting up any legal bar to the right of the defendants in taking title to the property as devised. If the question in this case concerned the forfeiture of the charter of either of the defendants there is no question but what the State alone would be the proper party to intervene, but as pointed out above, this is not a question of forfeiture, it is simply a question of title to the property, and if it has not been legally devised or if the defendants were incapable of holding it, then the title necessarily vested in the heirs a law.'

"After some further discussion it is said, l. c. 69:

" 'If the question at issue in this case grew out of contract relation between the plaintiffs and defendants, then it is quite clear, under all the authorities, that the plaintiffs could not take advantage of the want of power in defendants to take and hold the property or to make contracts.'

"Obviously, in the instant case the controversy between this plaintiff and the defendants grew out of contractual relations.

"Our attention is also called to Wyatt v. Stillman Institute, 303 Mo. 94, 260 S. W. 73, 76. That was a controversy between the collateral heirs of a deceased testator and the defendant corporation, a beneficiary under the will of the deceased. The defendant was organized under the laws of Alabama, 'for the purposes of training colored youths "in various branches of academic, collegiate, industrial and theological studies." ' It was held, following the ruling in State v. Board of Trustees of Westminster College, 175 Mo. 53, that the defendant was not to be classed as a religious corporation. The case did not involve, nor does the ruling settle, the question before us.

"Attention is also called to Society of Helpers of Holy Souls v. Law, 267 Mo. 667. That was a suit by a corporation claiming a devise under a will as against the collateral heirs of the testatrix. It was held in the majority opinion, the purposes of the articles of incorporation being considered that the plaintiff was incorporated for benevolent purposes, and not as a religious corporation, and hence, could take and hold the property devised by the will. Upon this point there was a vigorous dissent by GRAVES, J., who was of the opinion that, the articles considered, the charter of the plaintiff was void on its face and subject to collateral attack. The holding that the plaintiff was validly incorporated as a benevolent society settled the case, and much that was said in the majority opinion was unnecessary to a decision. In that case, as well as in the Proctor case, there was no contractual relation between the parties; the issue was not one arising out of contract, and the heirs claiming the property were not members of the society.

"In Klix v. St. Stanislaus Parish, 137 Mo. App. 357, it was said, l. c. 357:

" 'The establishment of religious corporations except to hold title to such real estate as may be prescribed for church edifices parsonages and cemeteries, is forbidden by the Constitution of the State. But the validity of the incorporation of a religious society cannot be drawn into question by a private suitor in a collateral proceeding. The appropriate remedy is by writ of *quo warranto* at the suit of the Attorney-General, or perhaps a prosecuting attorney. [Catholic Church v. Tobbein, 82 Mo. 418; St. George Church Soc. v. Branch, 120 Mo. 226, 243; Reorganized Church, etc. v. Church, 60 Fed. 937; Dubs v. Egli, 167 Ill. 514.]'

"The question was directly ruled in Catholic Church v. Tobbein, 82 Mo. 418. In that case the corporate existence of the plaintiff was put in issue by the answer. This court said, l. c. 424:

" 'In the City of St. Louis v. Shields, 62 Mo. 252, this court expressly sanctioned the doctrine laid down by Judge Cooley in his work on Constitutional Limitations, page 254, that whether a corporation exists *de jure* or not, its existence cannot be questioned in a collateral proceeding, if it appear to be acting under color of law, and recognized by the State as such. The question of its being must be raised by the State itself on a *quo warranto* or other direct proceeding; and this, although the act incorporating it, or authorizing its incorporation, is violative of the Constitution of the State.'

"That ruling has been cited with approval many times in cases involving corporations not organized for religious purposes. [State ex inf. v. Drainage District, 290 Mo. l. c. 60, and cases there cited.]

"In this case the articles state the purpose of forming a religious association. The petition which accompanied the articles states that the parties had associated themselves by the articles as an association for religious and educational purposes. The purpose of forming a church organization and of acquiring a church edifice or proper house of worship is shown, and the purposes stated go farther than that; but in the view we take under circumstances of this case, and of the relation of defendants to the plaintiff, it is not necessary to go into a discussion of all the purposes, or the entire effect of the articles of association.

"The issue here is between the plaintiff corporation chartered under the articles shown, and private persons, members of the Congregation, and shown to have sustained contractual relations with the plaintiff, in respect to the property which is the subject of the suit. Under the relation sustained by defendants they may not question the corporate existence of the plaintiff.

"In 14 Corpus Juris, page 230, paragraph 237, it is said:

" 'The doctrine of estoppel to deny a corporate existence by reason of having contracted with the corporation is not limited to contracts between a corporation and strangers, but applies also in the case of contracts between a corporation and its stockholders or members. And that is particularly true where the party so contracting has also recognized the existence of the corporation by taking an active part therein as a promoter, stockholder, member, or officer.'

"The evidence in the record shows the defendants as members of this Congregation, and active in its affairs; that the defendant. Samuel Arky was particularly active in promoting the organization of the Congregation, and was not only a member but an officer. He was its treasurer and was active in the effort to enable the Congregation to acquire the property as its place of worship. The evidence justifies the inference that the desire to dispose of the property was an incentive on his part and on the part of his associates, toward the

organization of the plaintiff Congregation. Under such circumstances we hold that defendants are in no position to deny the corporate existence of plaintiff, or its right to contract for the property or to take title thereto. What rights might be had by private persons who bear no contractual relation to such a corporation, and are not members of it, or, what right the State may have because of the character of the articles and charter of plaintiff, are not in issue here.

"The next objection urged is, that 'this was an action at law to quiet title and does not support the decree, which is a decree in equity requiring specific performance of an alleged .contract.' The decree rendered is in effect a decree for specific performance of a contract. It has been uniformly held for a long time, that in a suit to quiet title the character of the action is determined by the pleadings. [Koehler v. Rowland, 275 Mo. 573; Minor v. Burton, 228 Mo. 558; Lee v. Conran, 213 Mo. 404; Jacobs v. Waldron, 317 Mo. 1133.]

"In Koehler v. Rowland, supra, it was said, l. c. 581: 'It has been settled by this court that the character of an action brought under Section 2535 is determined by the issues which the pleadings raise. [Citing cases.] If the pleadings present issues of equitable cognizance, then it becomes a proceeding in equity. But a straight action under this statute, in the terms of the statute, is a suit at law.'

"In Jacobs v. Waldron, supra, l. c. 1137, it was said:

" 'In Section 1970, Revised Statutes 1919, it is provided that upon trial of a cause to determine title if *the same be asked for in the pleadings of either party,* the court may finally determine the rights of the parties and award full relief, whether legal or equitable. In addition, we have ruled that the action is at law or in equity according to the issues tendered by the pleadings. [Lee v. Conran, 213 Mo. l. c. 411, 111 S. W. 1151; Williamson v. Frazee, 294 Mo. l. c. 329, 242 S. W. 958; Thompson v. Stilwell, 253 Mo. l. c. 94, 161 S. W. 681; Strother v. Kansas City, 283 Mo. l. c. 283, 223 S. W. 419; Schneider v. Schneider, 284 Mo. l. c. 322, 224 S. W. 1; Barron v. Store Co., 292 Mo. l. c. 211, 237 S. W. 786; Stewart v. Stewart, 262 S. W. 1016; Sorrell v. Bradshaw, 222 S. W. 1026; Hayes v. McLaughlin, 217 S. W. l. c. 264.]

" 'It isn't sufficient to plead an equitable defense, but there must be a prayer for affirmative relief, based on such defense before the action is converted into one in equity. [Citizens Trust Co. v. Going, 288 Mo. l. c. 511, and cases cited, 232 S. W. 996.]'

"In the instant case neither party by his pleading founded his claim of ownership upon any equitable right. Nevertheless, the case

was tried as if it were one in equity. There was no request for a jury, or waiver of a jury. No declarations of law were asked. All of the details of the transactions between plaintiff and defendants were gone into minutely, without objection on the part of defendants at any time that any evidence offered was directed to issues not made by the pleadings. The claim that the court's decree is erroneous for the reason that the suit was one at law, and the decree one purely in equity, is made for the first time on appeal. In their motion for a new trial the defendants nowhere asserted error on the ground that the court in its decree had gone outside of the pleadings, or that the decree was one not authorized by the pleadings. In the motion of defendant Samuel Arky, under specification 15, he complained that 'the decree is against equity and good conscience;' and under specification 16 complained that the plaintiff did not come into court with clean hands, and was not entitled to any equitable relief. The like specifications are found in Hannah Arky's motion for a new trial. Under three or four specifications in each of these motions there was complaint that under the weight of the evidence, the amount found by the court to be due to defendants, $1,000, was inadequate, and that defendant Samuel Arky had paid out sums 'greatly in excess of $1,000 in connection with the Congregation.' The defendants filed no motion in arrest. They did not call the attention of the trial court to the alleged error now complained of.

"The petition stated a case under Section 1970, but did not state a case entitling plaintiff to the relief to be afforded by a decree for specific performance of a contract, yet, the parties tried the case upon the issue whether there was a contract of sale of the property, and a part performance. The question in controversy under the evidence was whether there was a contract of sale, and upon that, defendants made objection that the contract, if any, was not in writing. Thus, the issues under the evidence were, whether defendants had agreed to a sale at all; whether there was a part performance of the contract, possession taken thereunder, and improvements made upon the property, and payments made on the purchase price, etc. . . .

"It is insisted that the decree is erroneous because no written agreement or memorandum was signed by the defendants respecting the sale of their interests, therefore, the decree disregards the Statute of Frauds. The evidence showed an agreement by defendant and the owners of the other interests in the property to sell it to the Congregation, and the price which the Congregation was to pay; that possession was taken under the agreement; that such changes were made and furnishings installed as fitted the building for a syna-

gogue; that payments were made on the purchase price; that special taxes assessed against the property were paid, and the Congregation, through officials elected by its members, thereafter managed and cared for the property. All of these things were plainly and solely referable to the agreement, without which they would not have been done. There was put in evidence the minutes kept of numerous meetings of the officials and committees of the Congregation, among them the minutes or report of a meeting of the finance committee, held on March 21, 1918. Among the recitals of this report is the following:

" 'The Congregation don't belong .any more to four individuals—she belongs to us—she is ours—and we got to help her along,—because it is ours and we got to work for her,—'

"Defendant Samuel Arky, as treasurer, was one of those who signed this report.

"The evidence is sufficient to take the case out of the operation of the Statute of Frauds. [Hobbs v. Hicks, 8 S. W. (2d) 966; Scheerer v. Scheerer, 287 Mo. 92; Ross v. Alyea, 197 S. W. 270; Bless v. Jenkins, 129 Mo. 647.]"

Recurring to the question raised with respect to the judgment. From what has been said there can be no question but that this is a straight action at law. There is not a single allegation in either the petition or answer that affords a basis for affirmative equitable relief; yet the court, in effect, decreed specific performance of a contract for the sale and conveyance of real estate. It is well settled in this State that a court is without jurisdiction to render a judgment wholly outside of the issues as made by the pleadings. [Charles v. White, 214 Mo. 187, 112 S. W. 545; Gray v. Clement, 286 Mo. 100, 227 S. W. 111; McConnell v. Deal, 296 Mo. 275, 246 S. W. 594.] And the question of jurisdiction is of course never waived, but may be raised for the first time on appeal.

The rule that, where a petition is defective because of the omission of some necessary averment, the defect is waived, if evidence touching the omitted matter be received without objection, is without application in this case. Such rule obtains only where the petition is amendable, that is, where the omitted matter with respect to which the evidence is received can be incorporated in the petition without changing the cause of action. [Sawyer v. Railroad, 156 Mo. 468, 57 S. W. 108; Winn v. Railroad, 245 Mo. 406, 151 S. W. 98; Machinery Co. v. Bottling Co., 273 Mo. 142, 200 S. W. 1079.] It would not be contended that, if A sued B on a promissory note, the court in such action could give judgment for damages for assault and battery, even though evidence went in without objection

that B assaulted and beat A when the latter presented the note for payment: neither can the court with any greater propriety render a decree of specific performance in an action at law to ascertain and determine the title to real estate.

Said Section 1970 provides: "Upon the trial of such cause, if the same be asked for in the pleadings of either party, the court may hear and determine any and all rights, claims, interests, . . . and may award full and complete relief, whether legal or equitable." The prayer of the petition was as follows:

"Wherefore, plaintiff prays that the titles, estate or interest of the plaintiff and the said defendants, respectively, in said real estate be by the court ascertained and determined and that the court by judgment or decree define and adjudge the title, estate and interest of the plaintiff and said defendants severally in said real property, and that this plaintiff be adjudged or decreed such other and further relief in the premises as shall be deemed meet and proper." It is suggested that the prayer for general relief, under the provision of the statute just quoted, was sufficient to authorize the judgment for specific performance. A like contention was made in Peterson v. Larson, 285 Mo. 119, 225 S. W. 704. But it was there said: "The statute does not provide a special or complete scheme of procedure within itself. On the contrary, the procedure under it must conform in all respects to the provisions of the code. Under its provisions, broadly considered, a given relief is not 'asked for in the pleadings' where no attempt is made to allege therein such facts as would authorize it."

In Matthews v. Karnes, 320 Mo. 962, 9 S. W. (2d) 628, 631, which was an action at law to determine title, the petition ended with a prayer which specifically asked: "That he 'be adjudged entitled to the possession of said property, and that the defendant be required to surrender said possession to him, and for all proper and necessary writs, orders and process necessary to execute the decree and judgment of the court.'" A judgment awarding plaintiff possession and granting a writ of restitution was approved. As stated the action was one at law; the relief granted, as to possession, was legal as distinguished from equitable; and it was within the issues made by the pleadings—facts entitling plaintiff to possession were fully alleged in the petition. The ruling in this case is merely to the effect that a separate count in ejectment is not essential to the validity of a judgment for possession, in an action at law to determine title to real estate, where such relief is "asked for in the pleadings."

The court in this case expressly or impliedly found that plaintiff was in possession of the real estate in controversy under a valid contract of purchase and sale; that it had fully performed all of

the conditions of such contract on its part to be performed, except the payment of the purchase money; that it owed, defendant, Samuel Arky, on account of such purchase money the sum of $1,000; and that upon the payment of such sum, or a tender thereof, it would be entitled to be invested with the legal title to such real estate then held and possessed by said defendant. On these facts it should have defined and adjudged "the title, estate and interest of the parties severally in and to such real property" *as they then existed,* and without more.

Had facts warranting specific performance been pleaded, the decree rendered would not have been sustained by the proof. Plaintiff has no enforcible equity in the undivided one-fourth interest in the real estate to which defendant Arky now has the legal title, unless and until it pays, or tenders, to him the balance of the purchase money. [Wright v. Lewis, 323 Mo. 404, 19 S. W. (2d) 287.]

The judgment of the circuit court is reversed and the cause remanded with directions to that court to enter judgment in accordance with the views herein expressed, on the facts heretofore found by it. All concur.