(No. 14917.—Reversed and remanded.)
BESSIE B. BOUSLOUGH, Appellant, *vs.* WINFIELD W. BOUS-
LOUGH, Appellee.

*Opinion filed December 19, 1922.*

1. WILLS—*statement of the doctrine of equitable conversion.*
Where a testator devises land to be sold and the proceeds dis-
tributed his presumed intention is to give the real estate the quality
of personalty, and a court of equity, which regards things directed
to be done as if actually performed, will carry out such intention
unless something has intervened which prevents performance.

2. SAME—*devisees may re-convert the devise into real estate.*
Where a testator directs his executor to sell his land and distribute
the proceeds to certain devisees, the devisees, if all are *sui juris,*
may by concurrent action of all elect to take the real estate, as
such, in place of the proceeds, and the converted property will
thereby be restored in equity to its original state.

3. SAME—*equitable title may be acquired by agreement for re-
conversion—Statute of Frauds.* If devisees desire to effect a re-
conversion by means of a conveyance it must be in the form to
transfer legal title, but whether the legal title is held in trust by
an executor for the purposes specified in the will or is left to
descend to the heirs, the devisees may, by agreement among them-
selves in the nature of an adjustment and settlement of their rights
or by acts or declarations which plainly show such an intention,
effect a re-conversion which will give each devisee an equitable
title, or even a legal title, if the facts take the case out of the
Statute of Frauds.

4. PARTITION—*when grantee is entitled to partition according
to agreement for re-conversion.* Where a testator has directed his
executor to sell his real property after the death of his wife and
distribute the proceeds among certain devisees, all of whom sub-
sequently agree to a re-conversion of the devise by making con-
veyances to one of them who is in possession, and the deeds are
executed and delivered by all but one devisee the grantee may have
partition as against the devisee who refused to perform his agree-
ment to execute and deliver his deed, and in such case no question
of the Statute of Frauds is involved.

APPEAL from the Circuit Court of LaSalle county; the
Hon. EDGAR ELDREDGE, Judge, presiding.

JACOB CANTLIN, for appellant.

C. P. GARDNER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, Bessie B. Bouslough, filed her bill in equity in the circuit court of LaSalle county praying that homestead and dower might be set off to her mother, Mary D. Bouslough, as widow of Jacob H. Bouslough, and, subject thereto, for partition between herself and the appellee, Winfield W. Bouslough. The court sustained the general demurrer of Winfield W. Bouslough to the amended bill, and the appellant electing to stand by the bill, it was dismissed for want of equity.

The facts stated in the bill and admitted to be true for the purpose of the demurrer are as follows: Jacob H. Bouslough died January 14, 1916, leaving a last will and testament, by which he devised to his wife, Mary D. Bouslough, for life, or so long as she should remain his widow, his homestead, being block 4 in Harbaugh's addition to the city of Mendota, and requested his wife to allow his daughters Clissie and the complainant to live with her and occupy the homestead as a home during the continuance of such life estate. After the death of the wife, or in case of her marriage, the executor was directed to sell the property and distribute the proceeds, over and above necessary costs and expenses, equally among four of testator's children, viz., Annie G. Aumiller, Viola V. Feik, Delay D. Bouslough and Winfield W. Bouslough. The will was admitted to probate on February 15, 1916, and on June 28, 1916, the widow renounced the will and became entitled to homestead and dower in the property. About the time the will was admitted to probate Winfield W. Bouslough, defendant in this suit, in the presence of the widow, the complainant and

the other children above named, suggested that for reasons which he then stated, in justice to the complainant and in order to assure her a home, the premises should be conveyed by all the devisees to her, investing her with the legal title in fee simple, and promised that if the others would agree to that proposition he would join with them in executing and delivering deeds conveying to complainant all right, title and interest in the premises. During the spring of 1916 it was finally agreed between all the devisees that they would convey to the complainant all their right, title and interest in the premises so as to vest her with the fee simple title. In reliance upon that agreement, the widow in the fall of 1916 expended $2500 in remodeling and improving the dwelling for the purpose of providing the complainant, who lived with her, with a permanent home furnished with modern conveniences. This remodeling was done at the personal suggestion of the defendant and under his personal supervision for the purpose stated. On or about August 22, 1917, the defendant caused to be prepared drafts for three quit-claim deeds conveying the property to the complainant. In one of them Mary D. Bouslough, Annie G. Aumiller and William J. Aumiller, her husband, Delay D. Bouslough, a bachelor, and Clissie C. Bouslough, who is named in the will, were grantors. The second deed was to be executed by Viola V. Feik and Albert Feik, her husband, and in the third, the defendant and his wife were grantors. The deeds, with the exception of the one from the defendant and wife, were executed, filed for record and recorded, and he took the draft for a deed to be executed by himself and wife, but after the other deeds had been executed and recorded he refused to execute the deed conveying his interest. The conclusion of the bill was that the complainant had become seized in fee of an undivided three-fourths of the premises subject to the homestead estate and dower interest of the widow, and the defendant, subject to the same interests of the widow, had an undivided one-fourth. The

prayer was for assignment of homestead and dower and for partition.

Where a testator devises land to be sold and the proceeds distributed, his presumed intention is to give the real estate the quality of personalty, and a court of equity, which regards things directed to be done as if actually performed, will carry out such intention unless something has intervened which prevents performance. The doctrine is a doctrine of equity and has no application at law. (*Connell* v. *Crosby,* 210 Ill. 380.) In such a case, if the devisees are all *sui juris* they may by concurrent action elect to take the real estate, as such, in place of the proceeds, and the converted property is thereby restored in equity to its original state. (*Jennings* v. *Smith,* 29 Ill. 116; *Ebey* v. *Adams,* 135 id. 80; *Strode* v. *McCormick,* 158 id. 142; *Starr* v. *Willoughby,* 218 id. 485; *Darst* v. *Swearingen,* 224 id. 229; *Pasquay* v. *Pasquay,* 235 id. 48; *Hoopeston Public Library* v. *Eaton,* 283 id. 449.) The character of the bequest can not be changed from money to a devise of land except by concurrent action of all, since each has a separate right to insist upon the bequest as provided by the will.

Counsel for the appellee depends upon the decision in *Baker* v. *Copenbarger,* 15 Ill. 103, to sustain the claim that there was no conversion in this case. That was a case where there was a life estate in the widow with power to dispose of the fee, and whatever should remain unexpended was directed to be sold and equally divided among the testator's five children, one of whom was Martha Copenbarger. There was an attempt to prove that she had at one time agreed to sell her interest in the premises to William D. Newell for $200, to be paid in eight years. The court did not consider whether there was such an agreement, but held that there was no title and only a bequest in expectancy contingent upon the mother dying without disposing of the land, and the interest was not subject to levy and sale under execution against Newell. (*Ridgeway* v. *Underwood,* 67

Ill. 419.)   Martha Copenbarger never made a conveyance, and the court said that it was competent for a *feme covert* to elect to take land instead of money, but it could only be made under the forms and solemnities required to enable her to convey her fee.   It is still true that if a re-conversion is to be made by a conveyance it must be in the form to transfer legal title.   The disabilities dependent on coverture have disappeared from the law, but if they had not, those affected had made conveyances, and the rule would not apply to the defendant, who did not belong to the class affected by it.   As between the parties a re-conversion may be by an agreement in the nature of an adjustment and settlement of the rights of the respective parties to the property, and acts or declarations which plainly show such an intention are sufficient.   (*Dunham* v. *Slaughter,* 268 Ill. 625.)   The legal title may be held in trust by an executor for the purposes specified in the will or be left by the will to descend to the heirs by operation of law.   In either case an agreement for re-conversion will create an equitable right, so that a devisee may in equity avail of his title as a defense, or if the facts take the case out of the Statute of Frauds, may acquire the legal title.   (*Pasquay* v. *Pasquay, supra.*)   The defendant in this case, as executor, had no title but only a power of sale, and there was an agreement of all the devisees entitled to money to re-convert the property into real estate and convey it to the complainant.   The devisees, with the exception of the defendant, carried out their agreement, and at his suggestion and under his direction $2500 was expended.   But the question whether the defendant could be compelled to keep his agreement is not involved.   Where a party has made an agreement free from fraud, imposition or any other reason for setting it aside, a court of equity, as a practical, efficient and useful agency in the administration of justice, will, if possible, require him to redeem his pledge by doing what he agreed to do and find a way to make him do it.   But no question of that kind

is involved here, because there was no attempt to compel the defendant to carry out his agreement. The defendant agreed to the re-conversion, had drafts for deeds prepared, which were executed by the others, and complainant did not ask for specific performance by him but merely for partition, in which the three-fourths interest she had acquired should be set off to her. The argument based on the Statute of Frauds is therefore not adapted to the case.

The decree is reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*