## SADIE WYATT et al., Appellants, v. STILLMAN INSTITUTE.

### Division One, March 7, 1924.

1. **WILL: Realty: Interruption of Descent: General Intention.** The law, without volition on the part of the ancestor, casts the real estate of which he may die seized upon the heir, and it is only by some clear act of his, usually by will, that this devolution will be interrupted or interfered with; and if a change in the devolution provided by law is not clearly expressed, it must result irresistibly and imperatively from the general intention of the instrument, whether it be will or deed.

2. ————: ————: **Converted into Money.** A will devising all of testator's property, real and personal, to his wife during her natural life, and instructing and empowering his executor, upon her death, to sell all said property, and "the proceeds thereof I direct to be given" to a certain school, was a devise of a life estate in the land to his wife, but to the school there was no devise of land, or of any interest in land, but a bequest of money, the land being merely the source from which the money was to be obtained. For the purposes of the will the lands were converted into money.

3. **DEVISE: To Religious Corporation: Educational Institution: Real Estate.** An incorporated institution organized, under a statute authorizing the formation of educational institutions, for the training of colored youths "in the various branches of academic, collegiate, industrial and theological studies," is not to be classed as a religious corporation under Section 8 of Article 2 of the Constitution, and is under no disability to hold title to real estate devised to it.

4. **WILL: Real Estate: Converted into Money: Election to Take Land: Reconvention: Inconsistency with Will.**  But where the will gave the testator's lands to his wife during her natural life, and empowered and directed the executor, at her death, to sell the land, and directed that he turn over the net proceeds to an unincorporated school "to be used by it in educating young colored men," and said institution was afterwards incorporated, said institution could not, after the death of the life tenant, elect to take the land, for no land was devised to it, but the land was by the will converted into money, and the gift was exclusively to a charitable use, and under the doctrine of re-conversion only those who have the exclusive beneficial interest in real estate constructively converted into money may elect to take it in its actual condition.  Nor can the land be held and its rents and profits be merely applied to the use mentioned, for that would be inconsistent in an essential respect with the expressed purpose of the will, which imperatively directed that the lands be sold and the net proceeds be given to the institution.

5. ————: ————: **Fee: Naked Power to Sell.**  Where the will gives to the executor only a naked power to sell land he does not take the fee by implication.  The naked title in such case descends to the heirs, but the executor can sell the lands, and his deed divests the title out of the heirs and conveys the fee to the grantee.

6. ————: ————: **Power of Executor to Sell: Personal Trust: Discharge: Administration Pending.**  A will vesting a named executor with the naked power to sell estate lands does not create a personal trust, but the power adheres to the office of executor and must be exercised during the continuance of the executorship;  and though the probate court, by its judgment, approved his settlement as and for a final settlement and discharged him as executor, if the estate had not then been fully administered and the land had not been sold and the proceeds paid to the legatee, as the will directed, the judgment was unauthorized and void, and the administration is still pending, and the named executor having died, that court, and that court alone, is authorized to fill the vacancy in the office of executor, by the appointment of a suitable person, upon the nomination of the legatee, where the will so provides, or an administrator *de bonis non* with the will annexed, in default of such nomination.

7. ————: ————: **Fee: Sale Rents: Personal Property: Suit to Quiet Title.**  Where the will gave to testator's wife all his property during her natural life, and empowered and directed his executor, upon her death, to sell the lands, and gave the net proceeds to an educational institution, thereby converting the land into money, the testator's heirs took the naked legal title in fee in the real

Wyatt v. Stillman Institute.

estate, and the institution has no right, title or interest in the land as land, but, the wife being dead, does have the right to have the land sold by the executor, or, if he is deceased, by his successor duly appointed by the probate court; but the heirs' legal title to the real estate does not carry with it a right to the rents and profits that have accrued since the death of the widow, since they have the character of personalty and are to be distributed by the executor.

Headnote 1: **Descent and Distribution,** 13 C. J. sec. 2. Headnote 2: **Conversion,** 13 C. J. sec. 34. Headnote 3: **Religious Societies,** 34 Cyc. 1151. Headnote 4: **Conversion,** 13 C. J. sec. 87. Headnotes 5 and 6; **Executors and Administrators:** 5, 24 C. J. sec. 595; 6, 23 C. J. secs. 258, 260, 264; 24 Cyc. secs. 610, 2735, 2736.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED (*with directions*).

*Orren Wilson* and *McKay & Jones* for appellants.

(1)   The court erred in finding that the plaintiffs herein had no title, interest or estate in the lands in controversy.   Williams v. Lobban, 206 Mo. 411; Enueberg v. Carter, 98 Mo. 647; Coil v. Insurance Co., 169 App. 634; Brooks v. Roberts, 195 S. W. 1021; Deal v. Lee, 235 S. W. 1055; Dowd v. Bond, 199 S. W. 956; Barr v. Stone, 242 S. W. 664; Maynor v. Land & Timber Co., 236 Mo. 728; Riley v. O'Kelly, 250 Mo. 657; Toler v. Edwards, 249 Mo. 161; Charles v. White, 214 Mo. 211; Lantz v. Caraway, 50 L. R. A. (N. S.) 34; Waldemeyer v. Loebig, 183 Mo. 373.   (2)   The court erred in finding the fee-simple title to the lands in controversy vested in H. B. Pankey, trustee, he not being a party to the action nor having entered his appearance therein.   Brooks v. Roberts, 195 S. W. 1021; Deal v. Lee, 235 S. W. 1055; Dowd v. Bond, 199 S. W. 956; Barr v. Stone, 242 S. W. 664; Maynor v. Land & Timber Co., 236 Mo. 728; Riley v. O'Kelly, 250 Mo. 657; Toler v. Edwards, 249 Mo. 161; Charles v. White, 214 Mo. 211.   (3)   The court erred in ordering a sale of the premises in controversy, for the

reason that said court was without jurisdiction in this cause to make said order, and there was no pleading or evidence justifying such judgment. (a) It is clear the bequest to the Institute is not a gift. The intent is clear to attempt to create a trust. Musser v. Musser, 281 Mo. 649; Buchanan v. Kennard, 234 Mo. 117; Crow ex rel. v. Clay County, 196 Mo. 234; Festorazzi v. Church, 25 L. R. A. 360; Re Ingersoll, 12 N. Y. Supp. 103; Nichols v. Allen, 130 Mass. 211, 39 Am. Rep., 445; Maught v. Getzendanner, 65 Md. 527, 57 Am. Rep. 352; McHugh v. McCole, 40 L. R. A. 724; Re Schouler, 134 Mass. 426; Gibbs v. Rumsey, 2 Ves. & B. 294; Hopkins v. Grinshaw, 165 U. S. 739. (b) Whether or not the will created a valid trust is to be determined by the law of the domicile of the legatee and where trust was to be performed, and not by the law of the testator's domicile. Musser v. Musser, 281 Mo. 649; 40. Cyc. 1052; Hailey v. McLanius Est., 112 Miss. 705; Arrow Smith v. Children's Hospital, 21 Pa. Dist. 943; Sickles v. City of New Orleans, 80 Fed. 874; Hope v. Brewer, 18 L. R. A. 464; Congregational Unitarian Soc. v. Hale, 29 App. Div. 396, 51 N. Y. Supp. 704; Maples v. American Home Missionary Soc., 33 Hun, 360; Re Sturges, 59 N. Y. Supp. 783, 48 App. Div. 624, 62 N. Y. Supp. 1148; Re Lang, 30 N. Y. Supp. 388; Matter of Leo-Wolf, 55 N. Y. Supp. 650; Matter of Robertson, 51 N. Y. Supp. 502; Chamberlain v. Chamberlain, 43 N. Y. 424, 433. (4) The court erred in finding that, under the will, the Stillman Institute is entitled to the proceeds of the sale of the real estate in controversy. Authorities supra. (5) The court erred in finding that the power given to the executor under the will survived the final settlement of the estate, and that same could now be exercised, the court being without jurisdiction under the pleadings in this case to render such judgment. Donaldson v. Allen, 182 Mo. 647; De Lashmutt v. Teetor, 261 Mo. 436.

*Hugh B. Pankey* and *T. R. R. Ely* for respondent.

(1) On the death of testator, by the terms of his will, the title immediately became vested in Bettie Birthright for life and the fee in David B. Pankey as trustee of the gift for Stillman Institute and likewise as trustee of gift of disposal for Bettie Birthright. (a) The will creates a power to sell coupled with an interest in Bettie Birthright. It was the intention that David B. Pankey be vested with the fee-simple title and to hold said fee-simple title in trust in order to make disposition of two gifts, the first being for him to sell said property and give the proceeds to Bettie Birthright if she desired to do so either for the interest of the estate or for her comfort, and second to hold said title in fee for Stillman Institute and all property not sold by him as trustee at widow's election be sold and given to Stillman Institute. Therefore, there was a personal executorship and trusteeship intended to be created, and the making of the final settlement by David B. Pankey had no effect on the power of sale conveyed to said David B. Pankey, as that power survived the final settlement made by him as official execution. Crews v. Crews, 240 S. W. 151; In re Dwyer's Estate, 231 S. W. 672; Donaldson v. Allen, 182 Mo. 626, 640; DeLashmut v. Teetor, 261 Mo. 412; Stewart v. Jones, 219 Mo. 614; Gibson v. Gibson, 280 Mo., 519; Hazel v. Hagan, 47 Mo. 277; Littleton v. Addington, 59 Mo. 275; Foote v. Sanders, 72 Mo. 616; Lloyds, 44 Mo. App. 670. (b) David B. Pankey or his successor acted in the dual capacity as executor and trustee and the power given in this will is coupled with an interest. Dunbar v. Sims, 283 Mo. 256; Trigg v. Trigg, 192 S. W. 1015; Underwood v. Cave, 176 Mo. 1; Board of Trustees of Westminster College v. Dimmitt, 113 Mo. App. 81; Burford v. Aldridge, 165 Mo. 419; Swabey v. Boyers, 274 Mo. 332; (2) The will provides for the appointment of a trustee on the failure of David B. Pankey to act or inability to act. The nomination of this trustee was made, but even without such a provision in a will the testator's intention would not be allowed to be defeated because of the failure to name a

trustee. A trust will never be allowed to fail for want of a trustee. The circuit court has jurisdiction in the case of a vacancy to supply a trustee created by a will. Robinson v. Crutcher, 277 Mo. 1; Swabey v. Boyers, 274 Mo. 332; Buckley v. Monck, 187 S. W. 31; Brandon v. Carter, 119 Mo. 572, 581; Rothenberger v. Garrett, 224 Mo. 191; McQuitty v. Wilhite, 218 Mo. 586; Griffith v. Whitten, 252 Mo. 667; Smith v. Black, 231 Mo. 681; Jones v. Jones, 13 N. J. Eq. 236; Mo. Baptist Sanitarium v. McCune, 112 Mo. App. 332; Garesche v. Levering Investment Co., 146 Mo. 436; Sec. 7048, R. S. 1919. (3) The will created a valid charitable trust. Robinson v. Crutcher, 277 Mo. 1; Musser v. Musser, 218 Mo. 649; Jones v. Patterson, 271 Mo. 1; Schneider v. Kloepple, 270 Mo. 389; Catron v. Scarritt Collegiate Inst., 264 Mo. 713; Strother v. Barrow, 246 Mo. 241; Mott v. Morris, 249 Mo. 137; Buchannon v. Kennard, 234 Mo. 117; Lackland v. Walker, 151 Mo. 210. (4) The respondent, Stillman Institute, and the Tuscaloosa Institute are one and the same institution with the same purposes and the change in name was known to the testator may years prior to his death. Robinson v. Crutcher, 277 Mo. 1; Schneider v. Kloepple, 270 Mo. 389; Mott v. Morris, 249 Mo. 137; Catron v. Scarritt Collegiate Inst., 264 Mo. 713; Lackland v. Walker, 151 Mo. 210; Barkley v. Donnelly, 112 Mo. 561. (5) The proceeds of realty given in this will makes the beneficiary take as legatee as a constructive conversion took place of the realty into personalty. (a) The conversion of realty into personalty took place at the death of Bettie Birthright. Underwood v. Cave, 176 Mo. 1; Burford v. Aldridge, 165 Mo. 415; Board of Trustee of Westminster College v. Dimmitt, 113 Mo. App. 81; Campbell v. Johnson, 65 Mo. 439. (b) Equity will re-convert property where beneficiary is given the proceeds of the sale of real estate on the beneficiary's election, and the beneficiary under this equitable re-conversion may take the property itself instead of the proceeds derived from the sale of said land. Gilbreath v. Cosgrove, 193 Mo. App. 419; Griffith v.

Whitten, 252 Mo. App. 627; Nall v. Nall, 243 Mo. 247; Trigg v. Trigg, 192 S. W. 1011; Albert v. Sanford, 201 Mo. 117; DeLashmutt v. Teetor, 261 Mo. 412; 40 Cyc. 1764. (6) The purpose of this testator was clearly that he desired all of his property, not disposed of by his widow, to go to the respondent. The purpose of the law is to give effect to every wish and intendment expressed in the will of the testator. Payne v. Reece, 247 S. W. 1006; Shee v. Boone, 243 S. W. 882; Cook v. Higgins, 235 S. W. 807; Collins v. Whitman, 283 Mo. 383; Dunbar v. Simms, 283 Mo. 356; Huntington Real Estate Co. v. Megree, 280 Mo. 41; Gillilan v. Gillilan, 278 Mo. 99; Schneider v. Kloepple, 270 Mo. 389; Priest v. McFarland, 263 Mo. 229; Burnet v. Burnet, 244 Mo. 491, 505; Gibson v. Gibson, 239 Mo. 490; Edgar v. Emerson, 235 Mo. 553, 560; Underwood v. Cave, 176 Mo. 1; Grace v. Perry, 197 Mo. 562; Cross v. Hock, 149 Mo. 338; Garland v. Smith, 164 Mo. 16; Sec. 555, R. S. 1919.

RAGLAND, J.—This is an action under the statute to determine title to real estate. The land in controversy consists of 406 acres and is situated in Dunklin County. Charles Birthright, who was a resident of that county and who died there December, 1911, is the admitted common source of title. He left a widow, but no descendants. The plaintiffs are his collateral heirs. By the following paragraph of his will he made disposition of his entire estate:

"Second: I give and bequeath to my beloved wife, Bettie, all of my property of whatsoever character, real and personal, to hold and to enjoy so long as she shall live. And should she at any time deem it to be to the interest of the estate, she shall notify the executor thereof of her wishes and he shall sell said property so designated at either private, or public sale, upon such terms as may seem to him best, and at her death: the executor hereinafter named, is instructed and empowered to sell all of said property, both real and personal, at either public, or private sale, on such terms as may be deemed

by him best, and the proceeds thereof I direct to be given to the Tuscaloosa Institute at Tuscaloosa, Alabama, to be used by it in educating young colored men for the ministry; provided however, that I should survive my wife, then at my death the executor shall sell all of said property, both real and personal, at such time and upon such terms as may be thought best by him and the proceeds thereof paid to the said Tuscaloosa Institute, at Tuscaloosa, Alabama, for the said purpose of educating young colored men for the ministry. In case the party hereinafter named as executor shall not be living at the time for executing this will or in case for any reason he does not, or cannot serve, I desire that the proper officers of said Tuscaloosa Institute be notified and requested to nominate an executor herein.''

The will was executed October 5, 1893; it was duly probated in the Probate Court of Dunklin County, February 17, 1912, and on that date the executor therein named, David B. Pankey, duly qualified and letters testamentary were issued to him. On October 23, 1913, pursuant to notice published in accordance with the statute, he made what purported to be his final settlement as executor; it was approved and confirmed as such by the probate court, and he was thereupon discharged. David B. Pankey died in 1915; the widow, Betty Birthwright, died February 1, 1917, without having sold, or directed to be sold, any of testator's lands.

The Tuscaloosa Institute referred to in the will was, at the date thereof, an unincorporated association engaged, under the supervision of the governing bodies and committees of the Presbyterian Church, in educating young colored men for the ministry. The association was incorporated in 1895 under the laws of the State of Alabama, as the Stillman Institute. After its incorporation the Institute continued under the supervision of the Presbyterian Church, but entered upon a somewhat broader field of activity. Its purposes, according to its charter, are ''to train colored youths in the various

branches of academic, collegiate, industrial and theologi-
cal studies.''

In August, 1917, following the death of Betty Birth-
right,.the defendant, Stillman Institute, filed its petition
in the Circuit Court for Dunklin County, praying the ap-
pointment of H. B. Pankey as trustee ''to execute the.
terms of said Charles Birthright's will.'' The appoint-
ment was made as prayed. Thereafter the defendant
notified Pankey, as trustee, that it elected to take the
land itself instead of the proceeds of the sale thereof.

It seems to be conceded that at the time Pankey was
appointed as trustee under the will there were no unpaid
allowed claims against the estate.

The petition is conventional. After alleging that the
defendant is a corporation organized under and by
virtue of the laws of the State of Alabama, it avers that
the plaintiffs are the owners in fee simple of the land
in controversy and claim that title to it. It further al-
leges that defendant claims some title, interest or estate
therein adverse to that of plaintiffs, and prays the court
by its decree to define and adjudge the title, interest and
estate of the parties respectively, as provided by the stat-
ute.

The answer denies that plaintiffs own the land in
controversy; it avers that, on the contrary, they have no
interest therein whatever. Then by way of affirmative
defense it sets up the facts substantially as we have
stated them and on them asks a finding and decree, ''that
the property herein described was devised and bequeathed
to D. B. Pankey, or his successor, to sell and to give
the proceeds to said defendant; that said H. B. Pankey,
the selected trustee, holds said property for use of said
Stillman Institute, and is hereby ordered to sell said land
and distribute said proceeds to said Stillman Institute,
or that said Stillman Institute is the fee-simple owner
of said land.''

The reply does not traverse the facts pleaded in the
answer. It consists of a legal argument, with the plead-
er's conclusions of law, to the effect: (1) That defend-

ant could not take the title to the land, even if it elected to do so, because it is a religious corporation; (2) that the will did not create a personal trust with respect to the land which survived the administration of the estate, because the power of sale given the executor was merely in virtue of his office; and (3) that as the administration has been closed, final settlement made and the executor discharged, the power of sale attached to the executorial office has lapsed.

The trial court found and adjudged that plaintiffs have no right, title, interest or estate in the land in controversy, and that the fee-simple title thereto is vested in the trustee, H. B. Pankey, for the purposes of selling same and turning over to the defendant, Stillman Institute, the proceeds thereof. From such judgment plaintiffs prosecute this appeal.

I. The law, without volition on the part of the ancestor, casts the realty of which he may die seized, upon the heir. It is only by some act on the part of the ancester, usually by will, that this course of the law will be interrupted or interfered with. If there is to be any change in the devolution provided by law, it must be made to appear clearly. If it is not so expressed in terms by the ancestor, it should result irresistibly and imperatively from the general intention ascertained from the entire instrument, whether it be deed or will. [Compton v. McMahan, 19 Mo. App. 494, 500.]

Descent: Will.

Under the will in this case there were but two beneficiaries, the widow, Betty Birthwright, and the defendant. To the first there was a devise of a life estate in the land of the testator, with the power of disposition, but to the latter there was no devise of land or any interest in land. It was given money, land was merely provided as the source from which the money was to be obtained. [Ebey v. Adams, 135 Ill. 85.] The will therefore made no disposition, in express terms at least, of the fee in the land.

Money, Not Land.

II.   The executor was given no discretion with re-
spect to the sale of the lands, upon the termination of the
life estate.   The direction to sell and the direction to give
the proceeds of the sale to the Tuscaloosa In-
Conversion:   stitute were unconditional, and they were im-
Election to
Take Land.   perative.   The lands were therefore converted
into money for the purposes of the will and,
according to the great weight of authority, from the tes-
tator's death.   [Adams v. Watts Exr., 98 Ala. 389; Green-
man v. McVey, 126 Minn. 22; Compton v. McMahan,
supra; Gilbreath v. Cosgrove, 193 Mo. App. 419; 13 C.
J. 870, cases cited, N. 40.]   But whether the construc-
tive conversion occurred at the date of the testator's
death, or at the time when under the will the land *ought*
to have been sold (Williams v. Lobban, 206 Mo. 399, 413),
is in this case unimportant.

The respondent, Stillman Institute, after the death
of the life tenant, elected to take the land instead of the
proceeds to be derived from the sale thereof.   Such elec-
tion, however, does not invest it with the title, appellants
assert, because it is a religious corporation and there-
fore incapable under our law of taking the title to real
estate.   A corporation as to its character is to be judged
by the objects of its creation as expressed in its char-
ter.   Had the Tuscaloosa Institute incorporated solely
for the purpose of continuing the work in which it was
then engaged, that of educating young colored men for
ministry, it would no doubt be a religious corporation
within the purview of Section 8 of Article II of the
Constitution of Missouri.   [Proctor v. Board of Trus-
tees, 225 Mo. 51.]   But it was organized under the laws of
Alabama, "authorizing the formation of educational in-
stitutions," for the purposes of training colored youths
"in the various branches of academic, collegiate, in-
dustrial and theological studies."   It cannot therefore,
under the ruling in State v. Board of Trustees, 175 Mo.
53, be classed as a religious corporation.

It does not follow, however, that because respond-
ent was under no disability in respect to holding title to

real estate, its election invested it with the title to the land in controversy. Under the doctrine of re-conversion, only those who have the exclusive beneficial interest in the property constructively converted may elect to take it in its ‘actual condition. [13 C. J. 888.] Respondent had no such interest. The gift was exclusively to a charitable use. In addition to that fact, it is manifest that the holding of the land and merely applying the rents and profits to the use mentioned is inconsistent in an essential respect with the design of the donor. He gave money, all the proceeds of the land, and not merely the income arising from it, to be used by respondent in' the furtherance of its work in educating young colored men for the ministry. For both reasons we are of the. opinion, and so hold, that respondent's election did not effect a re-conversion.

III. The next inquiry is, did the executor named in the will, by necessary implication, take the fee in the land directed to be sold? In cases such as this it is ordinarily of no consequence whether it be held that the fee was devised by implication to the executor, as necessary to enable him to execute the trust, or that it was left by the will to descend to the heir at law; in either event the title would be divested by the execution of the power of sale. The question here with respect to the fee is of technical importance only, the action being one to determine title.

*Fee: Power of Sale: Personal Trust.*

The general principle applicable to the execution of trusts of the character of the one in question is, that the trustee will take "exactly. that quantity of interest which the purposes of the trust require." If the fee is required, the fee will be taken; if a less estate will suffice, a less estate, only, will be vested. [2 Jarman on Wills (6 Ed.) 1831.] The will in this case did not impose upon the executor any duty involving possession, control or management of the testator's land; it merely directed him to sell it. This naked power he could as effectively ex-

ercise without the fee as with it. It follows that he did not take the fee by implication.

IV. In investing the executor with a power of sale, the will in this case did not create a personal trust. The power conferred is one that adheres to the office of executor and must be exercised during the continuance of the executorship. [Donaldson v. Allen, 182 Mo. 647.]

**Personal Trust: Final Settlement and Discharge.**

As the Probate Court of Dunklin County by its judgment approved and confirmed a settlement of D. B. Pankey as and for his final settlement, and discharged him as executor, appellants contend that the power of sale has been rendered impossible of execution. At the time of the discharge of the executor, however, the estate of the deceased had not been "fully administered;" and it will not be until the land is sold and the proceeds paid to the legatee in accordance with the directions contained in the will. "An estate is not fully administered so long as anything remains to be done to vest the title of the decedent's estate in the beneficiary, whether creditor, next of kin, legatee, or devisee, which no one but an executor or administrator can lawfully do. It is held that this applies to such acts as paying a legacy, or distributing the effects or assets, although the assets had been reduced to money, paying debts, collecting debts, or the like." [1 Woerner's Am. Law of Administration (3 Ed.) 605, sec. 179.] The judgment of the probate court, which in effect closed the administration before the estate was fully administered, was unauthorized by the statute and is void. [State v. Holtcamp, 266 Mo. 347.] Consequently the administration is still pending in the probate court. And that court, and that court alone, is vested with jurisdiction to fill the vacancy existing in the office of executor in accordance with the provisions of the will, if respondent nominates a suitable person therefor, or, in default of such nomination, to appoint an administrator *de bonis non* with the will annexed. Upon such executor, or administrator, will then devolve the duty of completing the administration of the estate by selling the land and paying

the proceeds thereof to respondent in accordance with the provisions of the will. [Francisco v. Wingfield, 161 Mo. 542.]

It is obvious that the circuit court appointed H. B. Pankey as trustee under the will on the theory that the directions to sell the land and make application of the proceeds created a personal trust which survived the final administration of the estate. For the reasons indicated that view was erroneous. The circuit court was without jurisdiction, consequently its order appointing a trustee was a nullity.

V. In view of the foregoing, it must be held, on the conceded facts, that plaintiffs have the naked legal title in fee to the land in controversy, in trust for the general purpose of the will, and that the defendant has no right, title or interest in or to the land as land, but that it has the right to have the land sold and is entitled to the proceeds thereof when sold. In this connection it should be said that plaintiffs' legal title does not carry with it a right to the rents and profits that have accrued since the death of the life tenant. In view of the equitable conversion of the land the rents and profits have the character of personalty, and are to be distributed as such by the executor. [Greenland v. Waddil, 116 N. Y. 240.]

Title and Sale.

The judgment *nisi* is reversed and the cause remanded with directions to the circuit court to enter judgment in conformity with the views herein expressed. All concur.