# Richmond

RUBY STRICKLER V. W. H. BYRD AND S. J. PRICHARD,
RECEIVERS.

October 7, 1938.

Present, All the Justices.

The opinion states the case.

*Ward Swank,* for the appellant.

*Edward C. Martz* and *K. C. Moore,* for the appellees.

HOLT, J., delivered the opinion of the court.

In this cause Ruby Strickler is claiming dower in what she contends was real estate owned by her husband during coverture. The appellees say that dower should not attach because this estate is personalty and not realty. The master commissioner to whom the cause was referred was of the opinion that the estate was real and that dower did attach. To his report exceptions were taken. The chancellor was of the opinion that they were well taken; that the estate was personal and not real; that the widow had no dower rights therein, and so decreed.

On June 7, 1923 (the will bears date June 7, 1932, but this is a manifest mistake), John M. Strickler executed his last will and testament and died a short time thereafter. This will was duly admitted to probate on December 8,

1923. At the time of his death, he was seized and possessed of two mills, the Harrisonburg mill and the Pleasant Valley mill, together with his residence property, containing about twenty acres of land with improvements and situated near Harrisonburg.

It is not contended that there is any ambiguity in this will, but it is necessary that it be examined in detail in order to understand the scheme of distribution which the testator had in mind.

Will of John M. Strickler:

"I, John M. Strickler, of Harrisonburg, Virginia, being of sound mind and disposing memory, hereby make, publish and declare this to be my last will and testament, revoking hereby any and all other wills by me at any time heretofore made.

"FIRST: To my executor, hereinafter named, I bequeath and devise my whole estate, real personal and mixed, wheresoever situate for the following purposes: My said executor shall have full control, charge and management of all of my said estate, and shall continue my milling business at Harrisonburg, Virginia, until all of the indebtedness owed by me at the time of my death shall have been paid; providing, however, that in no event shall the said milling business be conducted by my said executor beyond the period of four years from the time of my death. All of the net proceeds of my estate and business accruing while the same is being managed and conducted by my executor, excepting such part thereof as is, in his judgment, needed in the conduct of said business, shall be by said executor, applied from time to time, to the payment of my said indebtedness.

"Whenever all of my said debts shall have been paid, or *whenver* the period of four (4) years shall have elapsed, from the date of my death, whichever shall first occur, then my executor shall sell or otherwise dispose of all my property. And in making said sale, or sales, said executor may sell either public*all*y or privately, or for cash or on credit,

as is, in his judgment, promotive of the best interests of my estate.

"SECOND: The total proceeds arising from the sale or other disposition of my whole estate as directed in the first paragraph of this my said will, after the payment of all proper expenses incurred in the management, conduct and administration of my estate, I bequeath and devise as follows:

"To my son, Ernest H. Strickler, I bequeath and devise one-half (½) of all of the net proceeds, arising from the sale or other disposition of my whole estate; to my daughter, VIRGIE E. SENGER, wife of Charles G. Senger, I bequeath and devise one-fourth (¼) of said net proceeds; and to my daughter, MARY R. LISKEY, wife of Frank O. Liskey, I bequeath and devise the remaining one-fourth (¼) of said net proceeds.

"THIRD: I further direct that no charge shall be made against my said son, Ernest H. Strickler, on account of any board, clothing or life insurance premiums which may have been provided by me for him during my lifetime. I further direct that all proper expenditures incurred by my said son, Ernest H. Strickler, for his board, clothing, or life insurance premiums during the period in which he acts as executor of my estate, shall be treated as an expense chargeable against the estate, and payable out of the same before there has been a final distribution or division thereof. And I further direct that in addition to the above there shall be paid to my son, Ernest H. Strickler, out of said estate prior to the final distribution thereof, and as compensation to him for services rendered by him to me during my lifetime, and to be rendered by him to my estate as executor thereof after my death, the sum of Two Thousand Dollars ($2,000.-00) per annum from the 1st day of May, 1922, until the date upon which he, my said son, as executor of my estate, shall make final settlement thereof. It being my express purpose and intention that all expenditures mentioned in this the third (3rd) provision of my will shall be paid out of the estate before final distribution thereof.

"Fourth: As executor of this my last will and testament, I hereby nominate and appoint my son, Ernest H. Strickler; and I hereby give him full power and authority as such executor and on behalf of my estate to borrow such sums of money from time to time as are in his judgment necessary and proper for the carrying of my said business; and likewise power to execute therefor notes bonds or other evidences of debt binding upon my said estate; and I further give him full power and authority to sell or otherwise dispose of any or all of my estate real or personal, and to execute proper deeds of conveyance therefor; and likewise power to do all other acts relating to the proper management, conduct and administration of my estate as hereinbefore directed.

"I further direct that my said executor shall for his services as such receive no compensation other than the Two Thousand Dollars ($2,000.00) per year directed to be paid to him in the third (3rd) provision of this will.

"In witness whereof, I have hereunto set my hand to this my last will and testament this 7th day of June, 1932.

John M. Strickler."

E. H. Strickler promptly qualified as executor and continued the milling business until July 31, 1928, but made no sale or disposition of this property. He did, however, make final settlement of his accounts before the Commissioner of Accounts as of December 28, 1928. It shows that the testator's indebtedness had been paid by him in full. On July 31, 1928, said three children, Ernest H. Strickler, Virgie E. Sanger and Mary R. Liskey, entered into a contract not under seal, which, by way of preamble, recites that they are the owners in the proportions named "of the following described real estate and personal property," which was all of the property that came from their father's estate, real and personal, tangible and intangible, all of which was to go into the partnership then formed. This follows:

"This Agreement made this 31st day of July, 1928, by and between Ernest H. Strickler, party of the first part,

Virgie E. Sanger, party of the second part, and Reba M. Liskey, party of the third part,

## "WITNESSETH:

"That in consideration of the premises, and in further consideration of the mutual promises hereinafter stated, they, said parties of the first, second, and third part, do hereby associate themselves as co-partners trading under the firm name of 'J. M. Strickler Mills' to engage in the business of owning and operating flour mills, and carrying on such businesses incidental thereto as are usually conducted by persons engaged in the general milling business.

"It is mutually understood and agreed by and between the parties hereto as follows:

"(1) The property to be used in the conduct of said partnership business is the real estate and tangible and intangible property, hereinbefore described, and which said property is owned by said co-partners in the following proportions: Ernest H. Strickler, one-half ($\frac{1}{2}$), Virgie E. Sanger, one-fourth ($\frac{1}{4}$) and Reba M. Liskey, one-fourth ($\frac{1}{4}$)."

     \*     \*     \*     \*     \*     \*     \*

"(8) All surplus earnings in excess of the amount deemed by the manager necessary for the conduct of the firm's business, shall be distributed to the co-partners in their proper proportions, and at such times, from time to time, as they or a majority of them shall agree."

     \*     \*     \*     \*     \*     \*     \*

"(11) No co-partner shall, without the consent of the other co-partners, use the firm's name, credit or property for other than partnership purposes; or sign or indorse negotiable paper or become surety for third persons, except for partnership purposes; or engage in speculation; or knowingly do any act by which the interests of the partnership shall be imperiled or prejudiced. Any of said co-partners may retire from the partnership at any time

upon giving the other partners three months' notice in writing of his or her intention so to do.

"(12) Upon the dissolution of said partnership, by reason of the death, withdrawal or other act of any partner, the remaining partners shall have the right to purchase the interest of such partner in the business, assets and good-will, by paying the value of such interest as determined by the last annual inventory and accounting, together with six per centum interest upon such value since said inventory. Upon such payment the retiring partner or his or her representatives shall execute and deliver to the remaining members all necessary conveyances of such interest.

"(13) Upon the final dissolution of said firm by lapse of time or otherwise, the said business shall be wound up, the debts paid, and the surplus divided between the partners in accordance with their interest therein.

"IN WITNESS WHEREOF, we have hereunto set our hands, the day and year first above written.

"ERNEST H. STRICKLER,
"VIRGIE E. SANGER,
"REBA M. LISKEY."

E. H. Strickler, one of these partners, died intestate February 11, 1936, but this business was continued by the surviving partners, Mrs. Sanger and Mrs. Liskey, until November 14, 1936, when they instituted this suit, praying that a receiver be appointed and that its affairs be wound up. This partnership was then insolvent as was the estate of E. H. Strickler.

The appellees, Wm. H. Byrd and S. J. Prichard, Receivers, and The First National Bank of Harrisonburg, a creditor, contend that this entire property which went into the partnership is and was by virtue of equitable conversion personal property and subject to its debts.

Ruby Strickler, widow of E. H. Strickler, claims that she is entitled to dower in that part of her husband's real estate which went into it and rests her claim primarily upon the fact that she and E. H. Strickler were married on

October 24, 1927; that is, in the year preceding the date of the articles of partnership.

■ Plainly the will of John M. Strickler effected an equitable conversion of his real estate upon the principle that equity will treat as done that which should have been done. *Driskill* v. *Carwile*, 145 Va. 116, 133 S. E. 773; *Marcy* v. *Graham*, 142 Va. 285, 128 S. E. 550; *Carr* v. *Branch*, 85 Va. 597, 8 S. E. 476.

Ruby Strickler contends that conceding this to be a proper construction of the will of John M. Strickler, a reconversion has been effected by his children, who are all of the beneficiaries interested and who have elected to take his real estate in kind, and in support of that contention she relies upon the following facts:

No sale of the property was made within four years.

By a partnership agreement of date July 31, 1928, executed by these three children and acknowledged on August 8, 1928, this property is described as real estate belonging to them.

On August 8, 1928, the day on which the partnership contract was acknowledged (but after it was written), Mrs. Sanger and her husband in consideration of $5,000 conveyed with general warranty to E. H. Strickler, "all right, title, interest, or equity, the same being a one-fourth undivided interest, owned or possessed by them, said parties of the first part, in and to all that certain lot of land, containing twenty acres, more or less, with brick dwelling house and other improvements thereon, situate and fronting on the west side of the Valley Turnpike, a short distance north of the northern corporate limits of the city of Harrisonburg, in Central District, Rockingham county, Virginia, known as the J. M. Strickler residence property."

This appears in the executorial settlement by the Commissioner of Accounts when the affairs of Ernest H. Strickler, executor, were laid before him:

"The executor produced satisfactory evidence that all indebtedness of the estate has been fully paid; and, by an agreement of record in the clerk's office of this county, full

and complete disposition of the property rights of the beneficiaries of the estate, and release of the executor from further liability, have been made by said beneficiaries. The taxes for 1928 are to be paid by said beneficiaries."

Said settlement shows that the entire amount of $7,338.87, paid out by John M. Strickler's executor, was supplied by his children. See this memorandum appended to it:

"To amt. supplied by Ernest Strickler, Virgie
E. Sanger and Reba M. Liskey, sole beneficiaries of estate of J. M. Strickler, dec'd,
in part, and by the executor..............$7,338.87"

On the 9th day of July, 1931, E. H. Strickler and wife, Reba Liskey and her husband, and Virgie Sanger and her husband, by deed with general warranty conveyed to J. M. Hurtzler, in consideration of $200, a lot of land which was a part of the same land "devised to Ernest H. Strickler, Reba M. Liskey and Virgie E. Sanger by will of John M. Strickler of date July 7, 1923."

On April 24, 1934, a deed of partition was executed by Reba Liskey and husband and E. H. Strickler and wife of the twenty-acre residence lot, which deed recited that these parties are "seized in fee simple of, and are tenants in common, in the said tract or parcel of land of which John M. Strickler died seized and possessed."

Undoubtedly there may be a reconversion.

"In *Harcum's Adm'r* v. *Hudnall*, 14 Gratt. (55 Va.) [369], 374, this is said: 'Though the subject thus directed to be converted is thus stamped with the character of the property into which it is to be converted, the party entitled to the beneficial interest may elect to prevent the actual conversion, and to hold it in the form in which he found it; and this election he may make by application to the court of equity or by unequivocal acts or declarations plainly manifesting his determination. * * * '" *Marcy* v. *Graham,* 142 Va. 285, 128 S. E. 550, 553.

"Any act or writing which shows an unequivocal intention to possess the property in its actual state and condition will amount to a valid election." 3 Pom. Eq. sec. 1177.

E. H. Strickler married Ruby Maiden on October 24, 1927. He is dead, and his wife is entitled to dower in land owned by him during coverture.

John M. Strickler's land under his will became personal property and was not reconverted because his executor and devisee did not sell within four years. *Harcum's Adm'r* v. *Hudnall, supra; Marcy* v. *Graham, supra.*

This is true for another reason: This legatee and executor could not change the character of his father's estate without the consent of his sisters.

Nor is the fact that they may have paid their father's indebtedness and taxes on this land an unequivocal expression of intent. These charges would have inevitably fallen upon them whether they were legatees or devisees, from which it follows that the character of the estate had not been changed when appellant and E. H. Strickler were married. Nor was anything done to indicate any purpose to effect such a change until July 31, 1928, when an article of co-partnership was entered into between these legatees.

This is rather an expression of opinion by these children as to the character of their estate than of a purpose to effect a reconversion. Dealing with it, however, as an unequovical declaration of a purpose to reconvert, that reconversion was but transitory, for as a part and parcel of it the partnership came into being. It may be likened to the transitory seizin of a purchaser who on the same day executes a mortgage to secure the unpaid balance of purchase money. *Hurst* v. *Dulaney*, 87 Va. 444, 12 S. E. 800. There was never a moment that E. H. Strickler's interest was realty as distinguished from his interest in the partnership. In appellant's brief it is said: "No deed of conveyance was required to transfer the ownership of the real estate of the individual owners to the partnership; all that was required in order to constitute the partnership real estate was the intention of the three co-owners."

In *Hancock* v. *Talley,* opinion by Special Court of Appeals, consisting of Wingfield, McLaughlin and Barton, Va. Law Journal, Vol. 5, p. 583, it was said:

"Whether the real estate held by persons who are partners is to be treated by a court of equity as partnership property, depends upon the intention of the parties when the property was acquired or appropriated."

In that case Hancock and Talley, who were partners, acquired real estate as individuals. No reference to a partnership was made in the deed. It was held that the rights of partnership creditors were superior to those of dower.

The controlling influence of intention was recognized in *Wheatley's Heirs* v. *Calhoun,* 12 Leigh (39 Va.) 264, 37 Am. Dec. 654.

In order that real estate be necessarily partnership personalty, it must be purchased with partnership funds, it must be purchased for partnership purposes, and it must be appropriated to partnership uses. 4th Va. Law Reg., 310. But one or more of these prerequisites may be dispensed with where the intention is plain.

In the instant case, the conclusion that these children did intend this real estate to go into the partnership and be used as partnership properly is unavoidable. They were "to continue the said milling business as co-partners." A milling business can not be continued without a mill. "The property to be used in the conduct of said partnership business is the real estate and tangible and intangible property hereinbefore described." Realty and personalty are blended into a common mass to be used for a single purpose.

The last paragraph in the partnership agreement lends weight to this conclusion:

"(13) Upon the final dissolution of said firm by lapse of time or otherwise, the said business shall be wound up, the debts paid, and the surplus divided between the partners in accordance with their interest therein."

We do not ordinarily designate land as a surplus after the payment of partnership debts. It is not suggested that

360

this real estate was to be returned to these children upon dissolution of the partnership.

Having reached the conclusion that all of the assets of the estate of John M. Strickler were personalty for partnership purposes, it follows that social creditors must first be paid out of these social assets. *Savings & Loan Corp.* v. *Bear,* 155 Va. 312, 154 S. E. 587, 75 A. L. R. 980.

If the conclusions which we have reached are sound, then the character of this estate was not changed by the subsequent conduct of the parties.

We are not concerned with the widow's right in the surplus for there is no surplus.

The decree appealed from must be affirmed, and it is so ordered.

*Affirmed.*