ROBERT HARRISON *v.* RICHARD LINDSAY WILSON PRENTICE, ET AL.

[No. 34, April Term, 1944.]

*Decided June 14, 1944.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, BAILEY, and CAPPER, JJ.

476

*William J. McWilliams*, with whom were *McWilliams, Duckett & Haley* on the the brief, for the appellant.

*Carlyle Barton*, with whom was *Wm. A. Andrews* on the brief, for the appellees, Richard Lindsay Wilson Prentice and others.

*Linwood L. Clark* for the appellee, Lizzie Ennis.

DELAPLAINE, J., delivered the opinion of the court.

Walter H. Hart, of Annapolis, died in 1937, leaving an estate appraised at several hundred thousand dollars, consisting principally of a number of parcels of land situated in this State. His will, admitted to probate in the Orphans' Court of Anne Arundel County, appointed Mercantile Trust Company of Baltimore his executor, directed the executor to convert his entire estate into cash, gave each of his daughters, Grace Hart and Constance Harrison, an annuity of $200 per month for a period of ten years, made certain specific bequests, and gave the residue of his estate to the Salvation Army, a body corporate, for the use of its Annapolis branch.

On January 20, 1939, a caveat filed by the daughters was settled by an agreement, which contains the following provisions: (1) that the executor is authorized to sell such parcels of real estate as the daughters and the Salvation Army may in writing direct for the purpose of raising money to pay debts, legacies, taxes and costs of administration; (2) that the daughters will assign their annuities to the Salvation Army upon its request; (3) that the Salvation Army will thereupon file its election with the executor to receive the real estate remaining unsold "in its unconverted form," so that it will be reconverted and thus remain unaffected by the testator's direction to sell, and become vested in the Salvation Army as sole residuary devisee; (4) that the Salvation Army, after acquiring title to the unsold real estate, will give the daughters one-half of the money distributed in the Orphans' Court, and convey to them as tenants in common one-half of the real estate at its appraised value,

to be selected by lot, the daughters and the Salvation Army drawing alternately, all adjustments of taxes and rents to be made before the Salvation Army conveys the real estate to them, provided that the total value of money and real estate delivered to them shall not exceed $100,000. On March 20, 1939, Linwood L. Clark, who was bequeathed a stick pin and requested to see that the will "is faithfully carried out with justice to everyone," instituted the pending equity proceedings in the Circuit Court for Anne Arundel County to test the validity of the agreement. The Court, upholding the agreement, ordered the estate to be distributed in accordance with its provisions. On May 3, 1940, the daughters and the Salvation Army applied for a judicial declaration of the proper rate of State inheritance tax payable on the residue. It was finally determined by the Court of Appeals that, when a caveat proceeding has been compromised, the rate of inheritance tax is controlled, not by the provisions of the will, but by the amount received under the terms of the agreement. *Hart v. Mercantile Trust Co. of Baltimore*, 180 Md. 218, 23 A. 2d 682.

On March 20, 1942, Mercantile Trust Company reported that Constance Harrison, whose domicile was in Suffolk County, England, had died and that her will had been probated in Ipswick, and thereupon asked for instruction as to the proper method of determining the interests of the parties under the settlement agreement. At that time the executor had about $40,000 more cash than necessary for payment of debts, legacies, taxes and costs of administration; but it was considered advisable to offer the remaining real estate for sale without waiting for a final decision on the subject. Accordingly, on January 8, 1943, the Chancellor ordered the executor to continue making sales, and to hold the proceeds subject to future determination of the interests of the parties, provided that in such determination "the proceeds of said sales shall be considered to be the real estate itself, to all intents and purposes and as fully as though said sales had not been made." Robert Harrison, appellant,

filed his petition on February 16, 1944, claiming that his deceased wife, Constance Harrison, left an interest in real estate in Maryland in which he is entitled to share under the law of this State. He alleged that his wife had sued him for divorce but had never obtained a decree, and while he had seven children of his own, she had none. If Mrs. Harrison left any personal estate in Maryland, it would be distributed according to the Act of Parliament, which provides that where a person dies domiciled in England, leaving a wife or husband or dependent child, and leaving a will, "then, if the court * * * is of opinion that the will does not make reasonable provision for the maintenance of that dependent, the court may order that such reasonable provision as the court thinks fit shall * * * be made out of the testator's net estate for the maintenance of that dependent." Inheritance (Family Provision) Act, 1938; Public General Acts of Parliament, 1937-38, ch. 45. For it is recognized that the transfer of personal property is governed by the *lex domicilii.* When the owner of personal property dies, the law of the country in which he has his domicile, and not the law of the country in which the property is found, regulates the succession. *Noonan v. Kemp,* 34 Md. 73; *Craig v. Craig,* 140 Md. 322, 328, 117 A. 756. But the interest of the surviving spouse in the real estate of a deceased spouse is determined by the *lex loci rei sitae.* Restatement, Conflict of Laws, Sec. 248. The State has plenary power to determine the manner in which real estate therein may be conveyed or devised, and to prescribe the succession in case of intestacy. *Bish v. Bish,* 181 Md. 621, 31 A. 2d 248; *Roach v. Jurchak,* 182 Md. 646, 35 A. 2d 817.

The Maryland testamentary statute provides that, if in effect nothing passes to the surviving husband, under a devise in the will of a deceased wife, he is not barred thereby, whether he makes a renunciation or not, but he takes one-third of the real estate as heir and one-third of the surplus personal estate, if his wife is survived by descendants; or one-half of the real estate as heir and

one-half of the surplus personal estate, if his wife is not survived by descendants, but is survived by father or mother. Code, 1939, Art. 93, Secs. 318, 330. Our inheritance statute also provides that a surviving spouse shall take as heir the same share in any real property within this State, belonging to the deceased spouse at the time of his or her death, though the deceased spouse dies testate, which the surviving spouse would take in the personal property of a resident spouse dying testate. Code, 1939, Art. 46, Sec. 3. If a wife makes no provision in her will for her husband, no renunciation is necessary in order to receive his lawful share in her estate. *Pacholder v. Rosenheim,* 129 Md. 455, 99 A. 672; *Marriott v. Marriott,* 175 Md. 567, 575, 3 A. 2d 493. Hence, if Mrs. Harrison is survived by her mother, but not by any descendant, her husband is entitled to one-half of her real estate. However, the Chancellor held that she did not leave any interest in real estate in Maryland. The surviving husband is now appealing to this Court from an order sustaining demurrers to his petition.

It is a familiar doctrine of equity that where a testator manifests a clear intention that his real estate shall be sold and the proceeds thereof distributed, the court considers the real estate converted into money at the time of the testator's death, unless there is some provision in the will which postpones the time of conversion. *Reiff v. Strite,* 54 Md. 298; *Talbott v. Compher,* 136 Md. 95, 110 A. 100; *Miller v. Hirschmann,* 170 Md. 145, 148, 183 A. 259. The basis of the doctrine of equitable conversion, under which real estate is considered for certain purposes as personal property, and personal property as real estate, is the intention of the party creating a right in the property, and the maxim "Equity regards that as done which ought to be done." *Craig v. Leslie,* 3 Wheat. 563, 578, 4 L. Ed. 460, 463; *Sands v. Church of the Ascension and Prince of Peace,* 181 Md. 536, 30 A. 2d 771, 776. In order that the doctrine may apply there must be an absolute obligation to convert either immediately or at a future time. A discretionary power, or mere ex-

pression of desire that a sale be made, is not sufficient. But if the direction to sell is mandatory, the doctrine of equitable conversion is not inapplicable merely because the time or manner of conversion is within the discretion of the person directed to make it. *Ford v. Ford,* 70 Wis. 19, 33 N. W. 188, 5 Am. St. Rep. 117. The allowance of ten years which the testator gave the executor in which to convert all the property into money, and the testator's direction to convert the estate into cash "as promptly as may be done" did not prevent the direction from being imperative, but resulted in an equitable conversion at the time of the testator's death.

However, even though real property may be constructively converted, the person entitled to the beneficial interest may elect to take the property and thus cause a reconversion. This principle is founded upon the presumption that the power to sell and convert into money is given by the testator for the benefit of the recipients of his bounty, and is not intended to prevent the beneficiaries from taking the land itself, if they so elect before the sale has actually been made. Reconversion is the result of an election expressly made by the person entitled to the property or inferred by a court of equity. The beneficiaries may make the election either by application to the court of equity or by unequivocal acts or declarations clearly manifesting a desire to reconvert. *Gerling v. Wyand,* 147 Md. 117, 127 A. 486; *Herman v. Hurst,* 160 Md. 96, 153 A. 24; *Mellen v. Mellen,* 139 N. Y. 210, 34 N. E. 925, 928; *Strickler v. Byrd,* 171 Va. 347, 198 S. E. 918, 130 A. L. R. 1373. In this case there is no doubt that the beneficiaries elected to reconvert. Their agreement of settlement explicitly states that the unsold real estate shall be considered as reconverted into its actual form as real estate. A compromise agreement between contesting beneficiaries to take real estate, which the testator ordered to be sold, in order to make a settlement of their interests, is sufficient to evidence an intention to reconvert. *Bouslough v. Bouslough,* 306 Ill. 24, 137 N. E. 517; 4 *Pomeroy, Equity Jurisprudence,* 5th

Edition, Sec. 1177. This agreement had the effect of defeating the executor's power of sale as given by the will. *Hadesty v. Hadesty,* 331 Pa. 81, 200 A. 6; 5 *Thompson on Real Property,* Permanent Edition, Sec. 2731. It is true that the daughters and the Salvation Army authorized the executor to sell any parcels which they may direct in writing to be sold for payment of debts, legacies, taxes and costs of administration; but in this very way they established their joint control over the disposition of the property. None of the pieces of property could be sold by the daughters alone or the Salvation Army alone, or by the executor without their joint direction. The beneficiaries elected, not to have the properties sold in accordance with the mandate of the will, but to have it sold in accordance with their own desires. After the beneficiaries rejected the terms of the will in respect to the manner of sale, and mutually agreed to change the terms of the will in this respect, the contention that there was no reconversion is untenable. *Kaufmann v. Kaufmann,* 226 Mo. App. 172, 43 S. W. 2d 879, 881.

The beneficiaries in this case were *sui juris.* It is a general rule that all persons who are *sui juris,* and who have the exclusive beneficial interest in real property constructively converted, may elected to take the property in its actual condition. *Wyatt v. Stillman Institute,* 303 Mo. 94, 260 S. W. 73; 18 *C. J. S., Conversion,* Sec. 55. It was insisted by counsel that the Salvation Army did not have the right to enter into the compromise agreement because the testator gave the residue of his estate for a charitable use and that the taking of real estate, instead of money, by the Salvation Army, would be inconsistent with the testator's wishes. We cannot accept that view because (1) the will distinctly states that the residue may be either real estate or personal property, and either corpus or income, and (2) the question is foreclosed by the decree of November 9, 1939, sustaining the validity of the agreement. It is unquestioned that the right to reconvert must be exercised in an unequivo-

cal manner, so as to leave no doubt of the intention of the beneficiaries. But the daughters and the Salvation Army unequivocally indicated their intention to elect to.take the real estate. The daughters are bound to assign their annuities to the Salvation Army, and the Salvation Army is bound to file its election to receive the real estate remaining unsold.

It appears from the record that the agreement of settlement was signed, sealed, witnessed and acknowledged as the act and deed of the parties. It is elementary that where an agreement has been entered into by competent parties, it is not within the power of either party to rescind it without an option to do so or without the consent of the other party, in the absence of fraud, duress or undue influence, or unless the equities are such that he should not be permitted to enforce it. A meeting of the minds is required, not only to make a contract, but also to rescind or modify it after it has been made. *Vincent v. Palmer*, 179 Md. 356, 19 A. 2d 183. It is conceded that the daughters have not assigned their annuities, and the Salvation Army has not filed its election to take the real estate. But these are formal provisions which the beneficiaries prescribed to chart the course of their procedure until the estate is finally settled, and their delay in following the required steps does not vitiate the agreement. It is the opinion of this Court that a change in the order of procedure, and not a revocation of the agreement, was mutually agreed upon by the parties with the sanction of the Chancellor. While Constance Harrison's annuity expired at her death, her sister will be required to assign her annuity before final settlement is made. The several properties, or their equivalent in money, must be drawn by lot, unless the parties agree to adopt some other plan of settlement. The Salvation Army is required to deliver to the daughters the amounts received from the sales, and not the appraised values, and also the rents to which they are entitled.

Inasmuch as a reconversion was caused by the agreement of settlement, Constance Harrison left in interest in real estate which passes under the Maryland law of descent, rather than distribution, upon the death of the beneficiary. *Hadesty v. Hadesty*, 331 Pa. 81, 200 A. 6. We must, therefore, reverse the order sustaining the demurrers to her husband's petition.

*Order reversed, and cause remanded for further proceedings in accordance with this opinion, the costs to be paid out of the estate of Constance Hart Harrison, deceased.*